FILED
CLERK

7/22/2013 8:42 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

MEMORANDUM OF
DECISION AND ORDER

IN RE: HSBC BANK USA, N.A., DEBIT CARD
OVERDRAFT FEE LITIGATION

2:13-MD-02451(ADS)(AKT)

-------------------------------------------------------X
OFRA LEVIN, 33 SEMINARY LLC,
BINGHOUSING INC., and ROCK VIEW
VENTURES LLC, *on behalf of themselves and
all others similarly situated*,

12-cv-5696(ADS)(AKT)

                    Plaintiffs,

          v.

HSBC BANK USA, N.A., HSBC USA INC., and
HSBC NORTH AMERICA HOLDINGS INC.,

                    Defendants.
-------------------------------------------------------X
DAREK JURA, *on behalf of himself and all
others similarly situated*,

                    Plaintiff,

12-cv-6224(ADS)(AKT)

          v.

HSBC BANK USA, N.A., HSBC USA INC.,
and HSBC NORTH AMERICA HOLDINGS
INC.,

                    Defendants.
-------------------------------------------------------X
LEAH HANES, *both individually and on behalf
of all those similarly situated*,

13-cv-3259(ADS)(AKT)

                    Plaintiff

          v.

HSBC BANK USA, N.A.,

                    Defendant.
-------------------------------------------------------X

1

**APPEARANCES:**

**Turk & Davidoff PLLC**
*Attorneys for the Plaintiffs Ofra Levin, 33 Seminary LLC, Binghousing Inc., and Rock View Ventures LLC*
250 W 57th St, 1218
New York, NY 10107
      By: Adam S. Turk, Esq., Of Counsel

**Himmelstein Law Network**
*Attorneys for the Plaintiffs Ofra Levin, 33 Seminary LLC, Binghousing Inc., and Rock View Ventures LLC*
2000 Powell St
Suite 1605
Emeryville, CA 94608
      By: Barry Himmelstein, Esq., Of Counsel

**Cohen Law Group, P.C.**
*Attorneys for the Plaintiff Darek Jura*
10 East 40th Street, 46th Floor
New York, NY 10016
      By: Brian S. Cohen, Esq., Of Counsel

**Rigrodsky & Long, P.A.**
*Attorneys for the Plaintiff Darek Jura*
825 East Gate Blvd
Suite 300
Garden City, NY 11530
      By: Seth Rigrodsky, Esq.
         Olga A. Pettigrew, Esq.
         Timothy J. MacFall, Esq., Of Counsel

**Cuneo, Gilbert & LaDuca LLP**
*Attorneys for the Plaintiff Leah Hanes*
507 C Street, Ne
Washington, DC 20002
202-587-5063
      By:  Jonathan W. Cuneo, Esq.
         Sandra W. Cuneo, Esq
         Robert J. Cynkar, Esq.
         Daniel M. Cohen, Esq., Of Counsel

**Cotchett, Pitre & McCarthy, LLP**
*Attorneys for the Plaintiff Leah Hanes*
840 Malcolm Road
Burlingame, California 94010

**By:** Nancy Fineman, Esq., Of Counsel

**Stroock & Stroock & Lavan LLP**
*Attorneys for the Defendants*
180 Maiden Lane
New York, NY 10038
    By: Joseph E. Strauss, Esq.
        Julia B Strickland, Esq.
        Lisa M. Simonetti, Esq., Of Counsel

**Nelson Mullins Riley & Scarborough LLP (DC)**
*Attorneys for the Defendants*
101 Constitution Avenue, NW
Suite 900
Washington, DC 20001
    By: George Everitt Kostel, Esq.
        Erika Jensene Karnaszewski, Esq., Of Counsel

**LeClair Ryan PC (Richmond)**
*Attorneys for the Defendants*
Riverfront Plaza - East Tower
951 E Byrd St
Richmond, VA 23219
    By: Steven David Brown, Esq., Of Counsel

**SPATT, District Judge**.

Presently before the Court are three analogous class actions against HSBC Bank USA,

N.A. ("HSBC") and related parties arising out of HSBCs overdraft charges on certain debit card

transactions.

On November 19, 2012, Ofra Levin, 33 Seminary LLC, Binghousing Inc., and Rock

View Ventures LLC (the Levin Plaintiffs) filed the first class action against HSBC in this Court.

On December 18, 2012, the Plaintiff Darek Jura filed a substantially similar class action against

HSBC, also in this Court.  On December 28, 2012, Jura moved pursuant to Federal Rules of

Civil Procedure ("Fed. R. Civ. P.") 42(a)(2) and 23(g) to, among other things, consolidate the

*Jura* action with the *Levin* action for pretrial purposes and to appoint his counsel – Rigrodsky &

Long, P.A. and Cohen Law Group P.C. – as interim class counsel.  HSBC does not oppose

consolidation and appointment of interim class counsel.  However, while the Levin Plaintiffs do not oppose consolidation, they seek appointment of their counsel – Turk & Davidoff PLLC and Himmelstein Law Network – as interim class counsel.  Neither counsel for Jura nor counsel for the Levin Plaintiffs appear willing to serve as co-interim class counsel with each other.

On February 20, 2013, the Plaintiff Leah Hanes filed a substantially similar class action against HSBC in the United States District Court for the Eastern District of Virginia.

Prior to the *Hanes* filing, HSBC moved separately pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the *Levin* action and the *Jura* action for failure to state a claim upon which relief can be granted.  Similarly, on April 15, 2013, HSBC moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the *Hanes* action for failure to state a claim upon which relief can be granted.

On June 5, 2013, the Judicial Panel on Multidistrict Litigation (the "MDL Panel") transferred and assigned the *Hanes* action to this Court, with its consent, "for coordinated or consolidated pretrial proceedings with the actions pending []here."  Despite this language and despite the fact that none of the parties oppose consolidation, the parties believe there is an issue regarding whether the transfer order effectively consolidated the *Hanes* action with the *Jura* and *Levin* actions or whether formal action on the consolidation motions need be taken by this Court. For that reason, the Court will resolve the consolidation issue in this Memorandum and Order.

On July 11, 2013, Jura requested that the Court treat its consolidation motion as including the *Hanes* action.  Also, that day, Hanes' counsel – Cotchett, Pitre & McCarthy, LLP and Cuneo Gilbert & LaDuca, LLP – moved for appointment as interim class counsel.  Unlike the respective counsel for the Levin and the Jura Plaintiffs, counsel for Hanes does not oppose the appointment of additional co-interim class counsel from the *Jura* and *Levin* actions.

For the following reasons, (1) the motion to consolidate for pre-trial purposes is granted in part and denied in part and (2) the firms of Cohen Law Group P.C; Rigrodsky & Long, P.A.; and Cuneo Gilbert & LaDuca, LLP; and Cotchett, Pitre & McCarthy, LLP are appointed co-interim class counsel.

## I.  BACKGROUND

### A.  <u>Factual Background</u>

#### 1.  <u>HSBC's Overdraft Program</u>

Unless stated otherwise, the following facts are drawn from the Plaintiffs' respective complaints and construed in a light most favorable to the Plaintiffs.

HSBC provides debit cards to its checking account customers, who include individual consumers and small businesses.  Customers can use their debit cards to make purchases or withdraw money from ATM machines.  HSBC is instantaneously notified of debit card transactions.  HSBC can immediately determine whether customers have sufficient funds in their accounts to cover the transactions.  HSBC can either accept or decline the transactions at that time.  If a customer does not have sufficient funds in his or her account to pay for a transaction, the transaction is considered an "overdraft."

As part of its overdraft protection program, HSBC will, in its discretion, honor overdraft payments.  Instead of declining overdrafts or informing customers that certain transactions will result in overdraft fees, HSBC routinely honors such overdrafts.  If HSBC honors an overdraft, it charges the customer a $35 fee for each overdraft.  HSBC does not alert its customers at the time of the transaction that it will cause an overdraft.

The Plaintiffs allege that HSBC uses a computer program that is designed to manipulate customers' transaction records in order to maximizes overdraft fees.  Generally, this means

that HSBC posts transactions from the largest to the smallest amount. This practice is also called "high-to-low" posting. A transaction is "posted" when HSBC either debits an expenditure from the customer's account or credits a deposit to a customer's account. HSBC does not debit funds from a customer's account at the moment a transaction is made. Instead, HSBC takes several days' worth of transactions and orders them from the highest to the lowest dollar amount before posting them to the customer's account. If the account is overdrawn after all of these transactions are posted, then the customer incurs overdraft fees.

HSBC charges customers the same $35 fee for each overdraft regardless of the amount of the transaction. This means that, using high-to-low posting, customers' funds in an account are depleted as quickly as possible, which can lead to overdraft fees. Customers cannot easily avoid these overdraft fees even if they closely track their income and spending.

Prior to July 1, 2010, HSBC automatically enrolled consumers in its overdraft protection program without giving them the opportunity to opt out of the program. The Plaintiffs allege that HSBC forced customers to participate in its overdraft program and adopted high-to-low posting for the sole purpose of recovering as many overdraft fees as possible from its customers.

### 2. HSBC's Account Holder Agreement

The terms of HSBC's checking accounts are contained in a standard account holder agreement called the "Rules for Deposit Accounts" (the "Rules"). HSBC distributes the Rules to all customers who open a new HSBC checking account. The Rules explain that:

> An overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway. We can cover your overdrafts through our standard overdraft practices or through an overdraft protection plan. Through our standard overdraft practices, we authorize and pay overdrafts for checks and we can also cover overdrafts for preauthorized automatic bill payments. Under our standard overdraft practices, we will

charge you the fee listed in our Terms & Charges disclosure.  We pay overdrafts at our discretion, which means we do not guarantee that we will always authorize and pay any type of transaction.  If we do not authorize and pay an overdraft, your transaction will be declined.  For consumer accounts, we do not authorize and pay overdrafts for the following types of transactions: ATM transactions and everyday debit card transactions.

Under the heading "Payment of Your Items for Your Account," HSBC states "the Bank generally pays the largest debit items drawn on a depositor's account first."  HSBC provides no other information about or explanation of this policy.

## B.  The Individual Plaintiffs

### 1.  Ofra Levin

The Plaintiff Ofra Levin is a checking account customer of HSBC.  Levin was issued a debit card when she opened her checking account in September of 2008.  On June 4, 2010, Levin had a balance of $21.33 in her checking account.  On June 5, 2010, she made a purchase on her debit card for $19.40.  If HSBC had deducted the amount of this transaction at the time of the purchase, Levin would have had a balance of $1.93 remaining in her account.  On June 8, 2010, Levin made a debit card purchase of $88.01.  HSBC did not debit the funds for Levin's June 5th and June 8th transactions at the time those transactions were made.  Had the transactions been posted in chronological order, Levin would have incurred only one overdraft fee.  Instead, on June 9, 2010, HSBC posted the transactions to Levin's account from the highest to the lowest amount.  This resulted in the assessment of two overdraft charges against Levin for $35 each.

HSBC never informed Levin that she could opt out of HSBC's overdraft program, nor did HSBC notify Levin when she made her debit card transactions that her account was overdrawn or that she would be charged a fee as a result of her transactions.

## 2. **33 Seminary**

The Plaintiff 33 Seminary opened a checking account with HSBC in September of 2008. HSBC issued 33 Seminary a debit card at that time. Between October 29, 2009 and November 2, 2009, 33 Seminary made twelve transactions on its account. On October 29, 2009, 33 Seminary made three debit card purchases for $38.44, $17.66 and $15.31, respectively. On October 30, 2009, 33 Seminary made five purchases on its debit card for $31.96, $21.72, $20.39, $14.47 and $12.60. On November 2, 2009, 33 Seminary deposited $500 in its account, and wrote three checks for $3,800, $691 and $668.

On November 3, 2009, HSBC posted 33 Seminary's transactions from October 29, 2009 to November 2, 2009. Had HSBC posted 33 Seminary's transactions in chronological, rather than high-to-low, order, 33 Seminary would only have incurred one overdraft fee for $35. HSBC actually posted the November 2nd deposit first, then posted the remainder of 33 Seminary's transactions from the highest to the lowest amount. HSBC then charged 33 Seminary with nine overdraft charges totaling $315. As with Levin, HSBC did not inform 33 Seminary that it could opt-out of HSBC's overdraft program. HSBC also did not notify 33 Seminary that it would incur overdraft fees if it made the transactions that caused its account to be overdrawn.

## 3. **Binghousing**

The Plaintiff Binghousing opened a checking account with HSBC in September of 2008. HSBC issued a debit card to Binghousing at that time. Binghousing made three transactions over the two-day period of November 15, 2009 to November 16, 2009. On November 15, 2009, Binghousing made two debit card transactions. The first was a $260 cash withdrawal from an ATM machine and the second was a $4.89 purchase. On November 16, 2009, Binghousing wrote a check for $50.00. If HSBC had used chronological, rather than high-to-low, posting,

Binghousing would have incurred one $35 overdraft fee. HSBC posted all three transactions from high to low on November 17, 2009. HSBC's posting method resulted in two overdraft fees for a total of $70. Again, HSBC did not inform Binghousing that it could opt-out of HSBC's overdraft program. HSBC also did not notify Binghousing that it would incur overdraft fees if it made the transactions that caused its account to be overdrawn.

### 4. Rock View Ventures LLC

The Plaintiff Rock View maintains an operating checking account with HSBC, which it opened in or about September 2008. It was issued a check card when it opened the account. During its time as a checking account customer of HSBC, Rock View has been allegedly charged with overdraft fees when there were sufficient funds in the account to cover the transaction at issue. On July 16, 2009, Rock View was charged with two overdraft charges in the amount of $35 each, for a total of $70.

### 5. Jura

The Plaintiff Darek Jura was, at all relevant times, a checking account customer of HSBC. He opened his checking account with HSBC in the late 1990s. During the relevant time period, Jura was issued a check card by HSBC. During his time as a checking account customer of HSBC, Jura was allegedly charged with overdraft fees when there were sufficient funds in his account to cover the transaction at issue. For example, on August 7, 2008, Jura was charged with five (5) overdraft charges for a total of $140. If HSBC had not allegedly manipulated and reordered Jura's transactions from highest to lowest, Jura would have incurred only two (2) overdraft fees.

### 6. **Hanes**

Hanes has a checking account with HSBC. She alleges that, on May 25, 2010, she was assessed four $35 overdraft fees, totaling $140, based on five debit card transactions that were posted to her account on May 24, 2010.

## C. **Procedural History**

### 1. **As to the Numerous Prior Federal and State Court Actions**

There has been a number of lawsuits brought with regard to HSBC, both in state and federal court, in an almost confusing fashion.

On February 11, 2011, the Levin Plaintiffs, excluding Rock View and represented by Rigrodsky & Long, P.A. and Cohen Law Group, P.C. (collectively "Rigrodsky and Cohen"), filed a class action complaint against HSBC in this court ("*Levin I*"). The *Levin I* complaint asserted several causes of action, including common law claims for breach of contract and the implied covenant of good faith, on behalf of a "National Class" of "[a]ll HSBC customers in the United States who . . . incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card transactions from highest to lowest." (*Levin I* Complaint, ¶ 27, 102-104).

On February 18, 2011, the MDL issued a Conditional Transfer order, finding that *Levin I* appeared appropriate for inclusion in *In re Checking Account Overdraft Litigation*, MDL No. 2036, pending in the United States District Court for the Southern District of Florida. Pursuant to 28 U.S.C. §1407, *Levin I* was subsequently transferred to the Southern District of Florida. To avoid transfer as a tag-along action to MDL No. 2036, Rigrodsky and Cohen then voluntarily withdrew *Levin I* without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). No action involving HSBC was ever transferred to that MDL.

On March 1, 2011, following the voluntary dismissal of *Levin I*, the Levin Plaintiffs brought a substantially similar class action in state court, but only on behalf of New York residents (*Levin II*). They asserted causes of action under New York law for breach of contract and the implied covenant of good faith and fair dealing, conversion, unjust enrichment, and violation of New York's deceptive trade practices law. On May 2, 2011, HSBC moved to dismiss the state complaint.

On June 26, 2012, the state court ruled on HSBC's motion to dismiss, granting in part and denying in part that motion. In particular, the state court allowed the claims for breach of the implied covenant of good faith and fair dealing and violation of the New York deceptive trade practices law to move forward, but dismissed the claims for conversion and unjust enrichment, with leave to replead.

Thereafter, the parties began discovery. However, internal conflicts among the plaintiffs and their counsel arose. As a result, on August 27, 2012, in *Levin II*, Rigrodsky and Cohen filed an amended class action complaint, asserting substantially *t*he same claims as originally pleaded in the initial state complaint, but adding Jura as a party and proposed class representative. Rigrodsky and Cohen also moved to amend the caption in *Levin II* to remove any reference to the Levin Plaintiffs.

On August 29, 2012, Rigrodsky and Cohen moved to withdraw as counsel for the Levin Plaintiffs due to "irreconcilable differences of opinion regarding the course and scope of representation." On October 15, 2012, the state Supreme Court granted the motion to amend the caption, but denied the motion to withdraw without prejudice.

On November 9, 2012, Rigrodsky and Cohen moved for class certification with Jura as the sole proposed representative of the New York account holders. Further, Rigrodsky and

11

Cohen sought to be appointed co-lead counsel for the class. That motion is currently pending before the state court. On November 19, 2012, the Levin plaintiffs, represented by Adam Turk, responded by filing the present federal court action (*Levin III*).

On November 27, 2012, the state court granted Rigrodsky and Cohen's motion to withdraw as counsel for the Levin Plaintiffs and to continue as counsel for Jura and the putative class in the state action. On November 29, 2012, in the state action, attorney Turk filed a notice of appearance on behalf of the Levin Plaintiffs.

On December 3, 2012, the Levin Plaintiffs, represented by Turk, moved to voluntarily dismiss the state action "in its entirety," including the claims asserted by Jura, pursuant to CPLR §3217. That same day, Rigrodsky and Cohen notified Turk that Jura did not consent to dismissal of either of his claims or the entire class action. Rigrodsky and Cohen indicated that they would seek the imposition of sanctions unless Turk withdrew that part of the Levin Plaintiffs' motion seeking dismissal of the action in its entirety, as opposed to dismissal of only the Levin Plaintiffs' claims.

On December 7, 2012, after Turk refused to withdraw the motion to dismiss the state court action, Jura opposed the motion as procedurally improper, and cross-moved for the imposition of sanctions. On December 11, 2012, the Levin Plaintiffs filed a reply memorandum in support of their motion to voluntarily dismiss the state action, wherein they represented, incorrectly, to the state court that Jura was not a named plaintiff in the State action.

Thereafter, on December 18, 2012, Jura filed his class action complaint against HSBC in this Court in order to "protect his interests and the interest of the Class." The Eastern District of New York actions, unlike the state action, assert claims on behalf of a nationwide class of HSBC customers.

On April 4, 2013, HSBC moved pursuant to 28 U.S.C. §1407 before the MDL to centralize all three cases in the Eastern District of New York.

On April 24, 2013, the Levin Plaintiffs (supported by HSBC) moved to stay the state action pending the outcome of HSBC's MDL motion. Jura opposes the stay motion, which remains pending.

## 2. The Levin Plaintiffs' Complaint: 12-cv-5696

As stated above, on November 19, 2012, the Levin plaintiffs, represented by Turk, commenced the present action before this Court on behalf of a national class of HSBC customers, seeking monetary damages, restitution, and injunctive relief. The Levin Plaintiffs assert that if a customer does not have sufficient funds in their checking account, a bank such as HSBC can decline to honor that specific debit or "point of sale" ("POS") transaction so that those retail and service transactions will not take place if a consumer was unable to present an alternate form of payment. Alternatively, a consumer could be made aware that it had insufficient funds in one's checking account and thus would be warned that an overdraft fee would be assessed if he or she proceeds with the transaction. However, the Levin Plaintiffs allege that HSBC routinely processes such transactions in order to charge its customers an overdraft fee of $35, even when the transaction is only a few dollars. It does not alert its check card customers at the time of a POS transaction or ATM withdrawal that the transaction will overdraft their account and cause them to incur fees.

According to the Levin Plaintiffs, this automatic fee-based overdraft scheme is designed and intended solely to increase overdraft fee revenue. In this regard, the Levin Plaintiffs allege that although it is possible to do so, HSBC does not alert its check card customers at the time of the transaction that it will overdraft their account and cause them to incur fees. Moreover, the

Levin Plaintiffs allege that HSBC manipulates customer transactions in order to deplete funds in a customer's account more rapidly, thereby allowing for more overdraft fees to be charged for multiple smaller transactions. Specifically, the Levin Plaintiffs accuse HSBC of holding transactions for one-to-several business days, reordering them from highest to lowest to maximize overdrafts and overdraft fee revenue.

In this case, the Levin Plaintiffs brought several causes of action, including violations of the National Bank Act, 12 U.S.C. § 24; violations of the implied covenant of good faith and fair dealing; conversion; unjust enrichment; deceptive trade practices in violation of New York General Business Law § 349; breach of contract; and negligence. On December 21, 2012, the Levin plaintiffs filed its first amended complaint, setting forth additional claims pertaining to HSBC's failure to made funds available on the schedule set forth in their Rules for Deposit Accounts.

On January 11, 2013, the Himmelstein Law Network moved for leave to appear *pro hac vice* also on behalf of the Levin Plaintiffs, and on February 7, 2013, United States Magistrate Judge A. Kathleen Tomlinson granted that motion.

On February 11, 2013, HSBC moved pursuant to Fed. R. Civ. Pr. 12(b)(6) to dismiss the first amended complaint for failure to state a claim upon which relief can be granted.

### 3.  **The Plaintiff Jura's Complaint: 12-cv-6224**

As stated above, on December 18, 2012, Jura commenced his action in federal court, assigned to United States District Judge Roslynn R. Mauskopf, on behalf of a national class of HSBC customers. The action was transferred to this Court on January 28, 2013.

Similar to the Levin Plaintiffs, Jura initiated his action seeking alleged monetary damages, restitution, and injunctive relief from HSBC arising out of their unfair, deceptive, and

unconscionable assessment and collection of excessive overdraft fees. Identical to the Levin

Plaintiffs, Jura asserts that HSBC routinely processes POS transactions where there are

insufficient funds in a customer's checking account. Jura alleges that HSBC does this in order to

charge its customers an overdraft fee of $35, even when the transaction is only a few dollars,

without alerting its check card customers at the time of a POS transaction or ATM withdrawal

that the transaction will overdraft their account and cause them to incur fees. According to the

Jura Complaint, this automatic fee-based overdraft scheme is designed and intended solely to

increase overdraft fee revenue. In this regard, Jura alleges that although it is possible to do so,

HSBC does not alert its check card customers at the time of the transaction that it will overdraft

their account and cause them to incur fees. Moreover, similar to the Levin Plaintiffs, he alleges

that HSBC manipulates customer transactions in order to deplete funds in a customer's account

more rapidly, thereby allowing for more overdraft fees to be charged for multiple smaller

transactions.

Jura brought several causes of action, including violations of the implied covenant of

good faith and fair dealing; conversion; unjust enrichment; violations of New York General

Business Law § 349; and breach of contract. On February 26, 2013, HSBC moved pursuant to

Fed. R. Civ. P. 12(b)(6) to dismiss the Jura complaint for failure to state a claim upon which

relief can be granted.

### 4.  **The Hanes Action**

Meanwhile, on February 20, 2013, Hanes commenced a substantially similar class action

against HSBC before the United States District Court for the Eastern District of Virginia.

Haynes asserted claims against HSBC for: (1) breach of contract and the implied covenant of

good faith and fair dealing; (2) violation of California's Consumers Legal Remedies Act, Cal.

Civ. Code §§ 1750 et seq. (the "CLRA"); (3) violation of the Unfair Competition Law, Cal. Bus. & Prof. §§ 17200 et seq. (the "UCL"); (4) violation of the False Advertising Law, Cal. Bus. & Prof. §§ 17500 et seq. (the "FAL"); and (5) conversion.  On April 15, 2013, HSBC moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Hanes complaint for failure to state a cause of action.

### 5. <u>The Motions to Consolidate, For Appointment as Interim Class Counsel, and the MDL Panel</u>

In the interim, on December 28, 2012, counsel for Jura moved pursuant to Fed. R. Civ. P. 42(a) to consolidate the *Jura* and *Levin III* actions for pre-trial purposes and also for the appointment of interim class counsel pursuant to Fed. R. Civ. P. 23(g).  In particular, Jura seeks appointment of Rigrodsky and Cohen, his counsel in the *Jura* action, as interim class counsel.  HSBC does not oppose the motion for consolidation and appointment of interim class counsel.  The Levin Plaintiffs agree that consolidation of the two actions is appropriate, but have moved the Court to appoint their counsel, Turk and Himmelstein, as interim class counsel.

On June 5, 2013, the MDL transferred and assigned the *Hanes* action to this Court "for coordinated or consolidated pretrial proceedings with the actions pending []here."  Despite this language, the parties believe that formal consolidation by this Court is necessary.

On June 21, 2013, Judge Tomlinson deemed as moot the motion to consolidate.  On June 27, 2013, at the parties' behest, Judge Tomlinson reinstated the motion to consolidate.

### 6. <u>The Post-MDL Motion Practice</u>

In in the interim, on June 20, 2013, in the *Hanes* action, at Judge Tomlinson's direction, HSBC re-filed its motion to dismiss the complaint for failure to state a claim upon which relief can be granted.

On July 11, 2013, Jura requested that the Court treat its consolidation motion to include the *Hanes* action.  Also, that day, counsel for Hanes moved for appointment as interim class counsel.  Further, as stated above, unlike Rigrosdky and Cohen and Turk and Himmelstein, counsel for Hanes does not oppose the appointment of co-interim counsel from the Jura and Levin actions.

## II.  DISCUSSION

### A.  <u>As to Whether all the Plaintiffs' Actions Are and Should be Consolidated</u>

Fed. R. Civ. P. 42(a) governs the consolidation of actions.  Under the Rule, **"**[i]f actions before the court involve a common question of law or fact, the court may:

(1) join for hearing or trial any or all matters at issue in the actions;
(2) consolidate the actions; or
(3) issue any other orders to avoid unnecessary cost or delay.

Thus, as long as there will be a fair and impartial trial, "Rule 42(a) . . . empowers a trial judge to consolidate actions for trial when there are common questions of law or fact to avoid unnecessary costs or delay."  <u>Johnson v. Celotex Corp.</u>, 899 F.2d 1281, 1284 (2d Cir. 1990), <u>cert. denied</u>, 498 U.S. 920, 111 S. Ct. 297, 112 L. Ed. 2d 250 (1990).

"The trial court has broad discretion to determine whether consolidation is appropriate."  <u>Id.</u>  However, the Second Circuit suggests that Rule 42(a) "be prudently employed as a valuable and important tool of judicial administration, invoked to expedite trial and eliminate unnecessary repetition and confusion."  <u>Devlin v. Transp. Commc'n Int'l Union</u>, 175 F.3d 121, 130 (2d Cir. 1999) (internal quotation marks and citations omitted).  In addition, the Second Circuit has explained that while "a district court should consider both equity and judicial economy" in assessing whether consolidation is appropriate, "efficiency cannot be permitted to prevail at the expense of justice" and, thus, "consolidation should be considered when savings of expense and

gains of efficiency can be accomplished without sacrifice of justice." Id. (internal quotation marks and citations omitted); see also Consorti v. Armstrong World Ind., 72 F.3d 1003, 1006 (2d Cir. 1995), vacated on other grounds, 518 U.S. 1031 (1996); Endress v. Gentiva Health Servs., 278 F.R.D. 78 (E.D.N.Y. 2011).

"The party moving for consolidation bears the burden of showing the commonality of factual and legal issues in the actions it seeks to consolidate." Augustin v. Jablonsky, 99-CV-3126 (DRH)(ARL), 2001 U.S. Dist. LEXIS 10276, at *50 (E.D.N.Y. Mar. 8, 2001), revd and remanded on other grounds, 461 F.3d 219 (2d Cir. 2006); Endress v. Gentiva Health Servs., 278 F.R.D. 78 (E.D.N.Y. 2011).

Having reviewed the Plaintiffs' moving papers, as well as the Plaintiffs' individual Complaints, the Court finds that the Plaintiffs have met their burden. Thus, consolidation is appropriate here. The Plaintiffs bring class action lawsuits on behalf of similar classes and raise almost identical claims against the same Defendants. Moreover, all three cases involve the same set of facts with respect to HSBC's policy and practice of allegedly manipulating customer account information and reordering debit transactions to maximize overdrafts or create overdrafts that would not exist but for HSBC's manipulation. As these cases involve almost identical questions of law and fact as well as almost identical parties and types of parties, in the Court's view, consolidation will economize both judicial resources and the resources of the parties. See Fed. R. Civ. P. 42(a); Johnson, 899 F.2d at 1285; Augustin, 2001 U.S. Dist. LEXIS at *50; Guidelines For The Division Of Business Among District Judges, Eastern District of New York, Rule 50.3.1 (a) ("A civil case is 'related' to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from

the same transaction or events, a substantial saving of judicial resources is likely to result as long as there will be a fair and impartial trial, from assigning both cases to the same judge").

Accordingly, the Plaintiffs' actions now pending before the Court are consolidated for all pre-trial purposes.

**B.    <u>As to the Appointment of Interim Class Counsel</u>**

Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") requires a court to determine at an "early practicable time" whether to certify a class and, if so, to appoint class counsel. "Because representation of a putative class prior to the filing of a motion for class certification is sometimes necessary, Rule 23(g) (3) permits a court to appoint interim class counsel." <u>Anderson v. Fiserv, Inc.</u>, 09 CIV. 8397 (BSJFM), 2010 WL 571812 at *2 (S.D.N.Y. Jan. 29, 2010).

In selecting interim class counsel, courts have looked to the criteria for determining the adequacy of class counsel set forth in Rule 23(g)(1)(A): (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.  See <u>e.g.</u> <u>In re Bank of Am. Corp. Secs., Derivative & ERISA Litis.</u>, 258 F.R.D. 260, 272 (S.D.N.Y. June 30, 2009); <u>In re Mun. Derivatives Antitrust Litig.</u>, 252 F.R.D. 184, 186 (S.D.N.Y. Aug. 1, 2008).  In addition, under Rule 23(g)(1)(B), courts may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class," including: "(1) the quality of the pleadings; (2) the vigorousness of the prosecution of the lawsuits; and (3) the capabilities of counsel, as well as whether . . . their charges will be reasonable." <u>In re Bank of Am.</u>, 258 F.R.D. at 272 (citations and internal quotation marks omitted).

If only one applicant seeks appointment as class counsel, a court must determine whether the applicant is "adequate" under Rule 23(g)(1) and Rule 23(g)(4), which requires that counsel "fairly and adequately represent the interests of the class." However, faced with competing "adequate" applicants, "the court must appoint the applicant best able to represent the interests of the class." Rule 23(g)(2).

Here, about the only matter counsel for Jura and counsel for the Levin Plaintiffs appear to agree upon is that they should not serve as co-interim class counsel alongside one another. While counsel for Jura calls into question the ethical behavior of the Levin Plaintiffs in the pending state court action, that allegation is irrelevant to whether Himmelstein and Turk, their current counsel, have engaged in any such alleged conduct. Similarly, to the extent Jura and the Levin Plaintiffs challenge each other's ability to serve as a class representatives, the Court deems that argument premature and more appropriately reserved for the class certification stage of this litigation.

That said, because counsel for Hanes has expressed a willingness to serve as co-interim class counsel, the Court will first consider its adequacy to serve as interim class counsel. In this regard, the Court finds that counsel for Hanes has performed significant work in identifying and investigating the claims in its action and that it enjoys substantial experience in complex litigation. It is true that counsel for Hanes does not have experience advancing the New York claims interposed in the *Levin* and *Jura* actions. However, as the *Hanes* action only involves claims under California state law, the Court places weight on the fact that counsel for Hanes has extensive experience with commercial litigation in California. Accordingly, the Court finds that counsel for Hanes satisfy the criteria under Rule 23 and hereby appoints them co-interim class counsel.

With respect to Rigrodsky and Cohen, counsel for Jura, the Court finds that they have devoted substantial time and resources to identifying and investigating substantially identical claims in the pending state court actions. Indeed, Rigrodsky and Cohen successfully defended, in part, the proposed state class action against HSBC's motion to dismiss; pursued discovery in that case; and filed a motion to certify the state action as a class action. In addition, Rigrodsky and Cohen have significant experience with complex class action litigation. (Timothy J. MacFall Decl, Exh M, N.) They also possess knowledge of the applicable law, having litigated the state action to the class certification stage.

As to Rigrodsky and Cohen's willingness to commit resources to represent the proposed class, Turk and Himmelstein insist that counsel for Jura "have not returned to this Court willingly to litigate the claims of a national class." (Levin Plaintiffs' Mem, at 8.) Rather, Turk and Himmelstein assert, Rigrodsky and Cohen was compelled to commence this class action after Turk and Himmelstein brought *Levin III* before this Court. However, Rigrodsky and Cohen assure the Court that they "intend to prosecute this action with the same aggressiveness and vigor with which they have successfully pursued the State Action." (Jura Reply Mem, at 3.) Similarly, Jura "is fully prepared to stay or voluntarily dismiss the State Action after the State Court rules on his cross-motion for the imposition of sanctions." (Id. at 5.) For these reasons, the Court is satisfied that Rigrodsky and Cohen has the resources and willingness to represent the same class in federal court.

In addition, the Court is not persuaded by the Levin Plaintiffs' argument that Rigrodsky and Cohen acted improperly in state court, for example, by dismissing *Levin I* "because the bulk of the litigation post-transfer would have been handled by the MDL Plaintiffs' Executive Committee, of which [] were not members." (Levin Plaintiff's Mem, at 4.) However, the Court

21

finds that Rigrodsky and Cohen withdrew *Levin I* because they believed "that the interests and convenience of the parties would be best served by maintaining the action in New York – the state where the supermajorities of HSBC's branches and customers, as well as HSBC's principal executive offices, are located." (Jura Mem, at 5.) While the Levin Plaintiffs contend that they merely accepted this determination by their then-counsel, Rigrodsky and Cohen, the Court finds that the Levin Plaintiffs acquiesced in the dismissal of *Levin I* because they could not convince the MDL Plaintiffs' Executive Committee to add certain claims to that action – namely, regarding HSBC's failure to make funds available for withdrawal based on the routing number of a deposited check and the branch where it was deposited.

Turk and Himmelstein also allege that Rigrodsky and Cohen improperly withdrew from representing the Levin Plaintiffs in the state court action because of their unwillingness to add these allegations. On the other hand, Rigrodsky and Cohen insist that "it repeatedly apprised the Levin Plaintiffs that [it] believed that the inclusion of such allegations would adversely impact the ability to have a class certified because that claim involved individual issues of fact inappropriate for determination on a class-wide basis." (Brian Cohen Decl, at ¶ 47).

Further, the Court considers the claim that Rigrodsky and Cohen withdrew from representing the Levin Plaintiffs because the Levin Plaintiffs attempted to coerce, albeit unsuccessfully, Rigrodsky and Cohen to pay them a kickback from any attorneys' fees awarded in the state action. (Id. at ¶¶ 15-50). Before disclosing this information, Rigrodsky and Cohen consulted with Professor Roy Simon of the Hofstra University School of Law about the propriety of disclosing privileged attorney-client information to defend against allegations of wrongful conduct. Again, at this stage of the litigation, the Court finds this disclosure relevant only inasmuch as the ability of counsel for Jura to serve as interim class counsel is at issue rather than

as to whether the Levin Plaintiffs are adequate class representatives. The Court concludes that Rigrodsky and Cohen could serve as adequate interim class counsel and engaged in no wrongdoing in the previous litigations. The Court hereby appoints them to serve as co-interim class counsel.

With respect to Turk and Himmelstein, because Himmelstein did not join Turk as co-counsel until after the amended complaint was filed in this action, the Court will consider Turk and Himmelstein separately. Turk does not set forth any argument in favor of his adequacy under the factors set forth in Rule 23(g)(1)(a). Further, Turk does not dispute that he filed a motion to voluntarily dismiss the state action "in its entirety," including the claims asserted by Jura, pursuant to CPLR §3217. Nor does Turk dispute that he apparently incorrectly represented to the State court that Jura was not a named plaintiff in the state court action. (MacFall Decl, Exh F. at 3). For these reasons, the Court declines to appoint Turk as an interim class counsel.

As to Himmelstein, he appears to have had significant experience with complex class action. In fact, Himmelstein and his former law firm served as class counsel in Gutierrez v. Wells Fargo, No. C 07-05923 WHA (N.D. Cal), the first of these "overdraft" cases against HSBC based on the re-sequencing of debit card transactions. That case resulted in a $203 million judgment for the plaintiffs, and remains the only "overdraft" case to go to trial. However, the Court notes that Himmelstein did not make an application to appear in the *Levin* action until January 2013, after the amended complaint was filed. While Himmelstein would likely serve as an able interim class counsel under Rule 23, absent an agreement on his part to serve with other counsel, the Court declines to appoint him at this time.

Based on the totality of the circumstances, the Court concludes that counsel for Jura is the more appropriate choice to serve as co-interim class counsel, particularly in light of their extensive experience with the parallel litigation in state court.

## III. CONCLUSION

For the foregoing reasons, it is hereby:

ORDERED, that the Plaintiff Jura's motion to consolidate the above-captioned actions for all pretrial purposes is granted in part to the extent that the motions are consolidated and denied in part to the extent Jura seeks have all future filings filed under his index number; and it is further

ORDERED, that (a) documents relating to all actions should be filed on the MDL docket sheet and on the docket sheet of each individual action; (b) documents relating to two or more, but not all, individual actions should be filed on the MDL docket sheet, and on the docket sheet of each affected individual action; and (c) documents affecting a single individual action should be posted on the docket sheet of that action, and on the MDL docket sheet; and it is further

ORDERED, that Rigrodsky & Long, P.A., Cohen Law Group P.C., Cuneo Gilbert & LaDuca, LLP, and Cotchett, Pitre & McCarthy, LLP are appointed as co-interim class counsel pursuant to Fed. R. Civ. P. 23(g)(2); and it is further

ORDERED, that a Consolidated Class Action Complaint be filed within 30 days of the date of this order and HSBC's motions to dismiss in the three actions are denied without prejudice and with leave to renew after the Plaintiffs file a Consolidated Class Action Complaint; and it is further

ORDERED, that under Index No. 2:13-md-02451-ADS-AKT, the Clerk is directed to terminate docket number 14; and it is further

ORDERED, that under Index No. 2:12-cv-05696-ADS-AKT, the Clerk is directed to terminate docket numbers 14, 35, 37, 39, 54, 84; and it is further

ORDERED, that under Index No. 1:12-cv-06224-ADS-AKT, the Clerk is directed to terminate docket numbers 7, 22, 54; and it is further

ORDERED, that under Index No. 2:13-cv-03259-ADS-AKT, the Clerk is directed to terminate docket numbers 51, 52, 61, and 64.


**SO ORDERED.**
Dated: Central Islip, New York
July 22, 2013

_____*Arthur D. Spatt*_____
ARTHUR D. SPATT
United States District Judge