FILED
CLERK

4/9/2015 1:55 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------X

In Re:  HSBC BANK, USA, N.A., Debit Card
Overdraft Fee Litigation

-------------------------------------------------------X

OFRA LEVIN, 33 SEMINARY LLC,
BINGHOUSING INC., *on behalf of themselves*
*and all others similarly situated*,

　　　　　　　　Plaintiffs,

　　　　v.

HSBC BANK USA, N.A., HSBC USA INC., and
HSBC NORTH AMERICA HOLDINGS INC.,

　　　　　　　　Defendants.
-------------------------------------------------------X
DAREK JURA, *on behalf of himself and all*
*others similarly situated*,

　　　　　　　　Plaintiff,

　　　　v.

HSBC BANK USA, N.A., HSBC USA INC.,
and HSBC NORTH AMERICA HOLDINGS
INC.,

　　　　　　　　Defendants.
-------------------------------------------------------X
LEAH HANES, *both individually and on behalf*
*of all those similarly situated*,

　　　　　　　　Plaintiff
v.

HSBC BANK USA, N.A., HSBC USA INC.,
and HSBC NORTH AMERICA HOLDINGS
INC.,

　　　　　　　　Defendants
-------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
13-md-2451 (ADS)(AKT)

12-cv-5696 (ADS)(AKT)

12-cv-6224 (ADS)(AKT)

13-cv-3259 (ADS)(AKT)

1

**APPEARANCES:**

**Cuneo, Gilbert & LaDuca LLP**
*Co-Interim Class Counsel in the Consolidated Proposed Class Action*
507 C Street, Ne
Washington, DC 20002
  By: Jonathan W. Cuneo, Esq.
    Sandra W. Cuneo, Esq.
    Daniel M. Cohen, Esq.
    Jennifer E. Kelly, Esq.
    Yifei Li, Esq.
    Robert J. Cynkar, Esq., Of Counsel

**Cotchett Pitre & McCarthy, LLP**
*Co-Interim Class Counsel in the Consolidated Proposed Class Action*
840 Malcolm Road
Burlingame, CA 94010
  By: Alexander E. Barnett, Esq.
    Nancy L. Fineman, Esq.
    Aron K. Liang, Esq., Of Counsel

**Rigrodsky & Long, P.A.**
*Co-Interim Class Counsel in the Consolidated Proposed Class Action*
825 East Gate Blvd
Suite 300
Garden City, NY 11530
  By: Seth Rigrodsky, Esq.
    Timothy J. MacFall, Esq., Of Counsel

**Cohen Law Group, P.C.**
*Co-Interim Class Counsel in the Consolidated Proposed Class Action*
10 East 40th Street, 46th Floor
New York, NY 10016
  By: Brian S. Cohen, Esq.,
    Clifford J. Bond, Esq., Of Counsel

**Turk & Davidoff PLLC**
*Attorneys for Ofra Levin, 33 Seminary LLC, Binghousing Inc., and Rock View Ventures LL in the Levin Action and Current Amici to the Consolidated Proposed Class Action*
250 W 57th St, 1218
New York, NY 10107
  By: Adam S. Turk, Esq., Of Counsel

**Himmelstein Law Network**
*Attorneys for Ofra Levin, 33 Seminary LLC, Binghousing Inc., and Rock View Ventures LL in the Levin Action and Current Amici to the Consolidated Proposed Class Action*
2000 Powell St
Suite 1605
Emeryville, CA 94608
     By: Barry Himmelstein, Esq., Of Counsel

**Stroock & Stroock & Lavan LLP**
*Attorneys for the Defendants*
180 Maiden Lane
New York, NY 10038
     By: James L. Bernard, Esq.
         Nathan H. Stopper, Esq.
         Joseph E. Strauss, Esq.
         Julia B Strickland, Esq.
         Wesley M. Griffith, Esq.
         Lisa M. Simonetti, Esq., Of Counsel

**Nelson Mullins Riley & Scarborough LLP (DC)**
*Attorneys for the Defendants*
101 Constitution Avenue, NW
Suite 900
Washington, DC 20001
     By: Erika J. Karnaszewski, Esq., Of Counsel

**SPATT, District Judge**.

This litigation encompasses allegations relating to the imposition of overdraft charges on certain debit card transactions by the Defendants HSBC Bank USA, N.A.; HSBC USA Inc.; and HSBC North America Holdings Inc. (collectively "HSBC"). Specifically, the Plaintiffs allege that HSBC provides debit cards and/or ATM cards to its checking account customers. If there are insufficient funds for a given debit card transaction, it is considered an "overdraft." HSBC may allow such transactions for a given debit card transaction to proceed, but the account is charged an "overdraft fee" of $35. The Plaintiffs allege that, in order to maximize the revenue from overdraft fees, HSBC posts debits to customer accounts in a non-chorological order and/or "largest to smallest" order, causing customers to incur multiple overdraft fees that would not

have been imposed had the transactions been posted chronologically or in a "smallest to largest" order. The Plaintiffs also allege that HSBC fails to clearly disclose the posting order to its customers; does not advise them that they may opt out of HSBC's overdraft program; and fails to post deposited funds to their accounts in a timely manner, resulting in additional overdraft fees.

On March 1, 2011, Ofra Levin, 33 Seminary LLC, Binghousing Inc., and Rock View Ventures LL (the "Levin Plaintiffs") filed a putative class action against HSBC in New York State Supreme Court (the "State Court Action").

On August 27, 2012, Darek Jura ("Jura") was added as a named plaintiff to the State Court Action.

On November 19, 2012, the Levin Plaintiffs filed a parallel putative class action in this Court, Ofra Levin et al. v. HSBC Bank USA, N.A. et al. (E.D.N.Y. 12-CV-5696).

On December 19, 2012, Jura filed a separate, parallel putative class action in this Court, Darek Jura v. HSBC Bank USA, N.A. et al. (E.D.N.Y. 12-CV-6224).

On December 28, 2012, Jura moved pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 42(a)(2) and 23(g) to, among other things, consolidate the Jura action with the Levin action for pretrial purposes and to appoint his counsel – Rigrodsky & Long, P.A. ("Rigrodsky & Long") and the Cohen Law Group P.C. ("Cohen") – as interim class counsel. The Levin Plaintiffs did not oppose consolidation, but sought appointment of their counsel – Turk & Davidoff PLLC ("Turk & Davidoff") and the Himmelstein Law Network ("Himmelstein") – as interim class counsel. Neither counsel for Jura nor counsel for the Levin Plaintiffs appeared willing to serve as co-interim class counsel with each other.

On April 24, 2013, in the State Court Action, the Levin Plaintiffs moved pursuant to New York Civil Practice Law and Rules ("CPLR") § 2201 for a stay of that matter. The Levin

Plaintiffs argued before the State Court that "Jura cannot stand simultaneously as the representative of a New York class in this Court and an overlapping national class in federal court; nor could his counsel simultaneously pursue both actions, creating an unseemly race to judgment between the state and federal courts, in which counsel are running with one foot in each lane." (Document No. 142, Exh B. at 1-2.)   The Levin Plaintiffs further represented to that Court that "[s]hould Jura request that the action be dismissed without prejudice under CPLR § 3217(b), the Levin Plaintiffs will join in the motion." (Id. at 7 n. 3)

On June 5, 2013, the Judicial Panel on Multidistrict Litigation ("MDL") centralized all three federal actions before this Court.

On June 27, 2013, this Court held a conference at which counsel for various parties – including Rigrodsky and Long, Cohen, and Cuneo Gilbert on behalf of Jura; Himmelstein on behalf of the Levin Plaintiffs; and Stroock & Stroock & Lavan LLP ("Stroock & Stroock") on behalf of HSBC – were present.

At this conference, counsel for HSBC expressed their belief that the appointment of a leadership structure should be a priority for the Court because it would allow HSBC, if it so desired, to negotiate with a single set of plaintiffs' counsel:

> MS. STRICKLAND [HSBC's Counsel]: . . . We would suggest, your Honor, that the first thing to address here is the leadership of the plaintiffs group so that your Honor and we are dealing with one voice on the side of the plaintiffs since, as I said, the claim is basically one claim and that's why the MDL panel actually brought these cases together and sent them to your Honor.  The MDL panel recognized that.
>
> We would request that the first thing that happen here is that we address who's going to run the case from the plaintiffs' side, get a consolidated complaint on file, and then go forward so that we're not all stuck briefing three motions, your Honor deciding three motions, and then continuing to observe the squabbling among plaintiffs over who's going to run the show.  And so that would be our suggestion.  I would also add to that, we have said repeatedly to various counsel that we're prepared to engage in a settlement conversation and a mediation, but

we're not prepared to do that until we understand who is the captain of the ship on the plaintiffs' side because your Honor can only imagine if we tried to settle with one set of lawyers, what would happen in terms of the fighting among the others. And so we remain open to mediation, but we need guidance as to parties, who to deal with so we don't find ourselves in exactly the position that your Honor is finding himself right now, which is listening to three competing voices, all of whom basically have the same claim but fighting for who's in charge.

(Trans., at 23-24.)(emphasis added). Counsel for HSBC further stated: "it's very difficult to try to get the case settled when you have three competing plaintiffs groups and so we would be very open to having a mediation but we don't even know who to talk to, to be perfectly candid." (Id. at 29.)

On July 11, 2013, counsel for Hanes – Cuneo Gilbert & LaDuca, LLP ("Cuneo Gilbert") and Cotchett Pitre & McCarthy, LLP ("Cotchett Pitre") – also moved for appointment as interim class counsel.

On July 22, 2013, this Court (1) consolidated the three federal actions for all pretrial purposes; (2) appointed co-interim class counsel; and (3) and directed interim class counsel to file a consolidated class action complaint within thirty days of the date of that order. In particular, the Court appointed Cuneo Gilbert, Cotchett Pitre, Rigrodsky & Long, and Cohen as co-interim class counsel. The Court declined to appoint as co-interim class counsel Turk & Davidoff or Himmelstein, counsel for the Levin Plaintiffs.

On July 30, 2013, Turk & Davidoff and Himmelstein moved pursuant to Local Rule 6.3 of the Eastern District of New York and Fed. R. Civ. P. 59(e) for reconsideration of the July 22, 2013 order insofar as it declined to appoint them as co-interim class counsel.

On August 14, 2013, in the State Court Action, Justice Eileen Bransten held a conference at which counsel from Rigrodsky & Long, Himmelstein, Turk & Davidoff, and Stroock &

Stroock were present.  As Hanes has never been a party to the State Court Action, her counsel was not present.

At this conference, Jura, represented by Rigrodsky & Long, moved to voluntarily discontinue his claims without prejudice pursuant to CPLR § 3217(b) and 908.  Counsel for Jura alerted Justice Bransten to the representation made by the Levin Plaintiffs that if Jura moved to voluntarily discontinue its claims, they would join in that motion. (Trans. at 12.)  Justice Bransten then queried counsel for the Levin Plaintiffs if they objected to Jura's motion for a voluntary discontinuance.  The Levin Plaintiffs did not object, and Justice Bransten granted the motion.  The Levin Plaintiffs subsequently withdraw their motion to stay the State Court Action.  However, the Levin Plaintiffs did not join Jura's motion to voluntarily discontinue or separately move to voluntarily discontinue their claims.

Counsel for HSBC then engaged in the following colloquy with Justice Bransten:

MR. STRAUSS [Counsel for HSBC]: [The Levin Plaintiffs] previously represented to this Court  that should Jura request that the action be discontinued he would join in that motion.

. . .

Now, the way this is playing out, we still have two class actions.  We have a class action here on behalf of the Levin plaintiffs, and we have a class action -- we have three class actions consolidated MDL'd in the Federal Court.  So while he's free to withdraw the motion, we're prepared to – defendants are prepared to make a motion under 3211(a)(4).

THE COURT: I suggest you do.

MR. STRAUSS: Okay.

THE COURT: All right. I think that would be a  happy resolution in this entire matter. I mean I have no interest to having a class that's going to be an equal class in the fed.

MR. STRAUSS: Exactly, your Honor.

THE COURT: Never thought this matter should be here, but, you know, if you want to come here, you want it to be a class action in the state courts, that's all the better. It's harder to be a class action here than it is in the federal courts, so you'll probably be better off if you want classification of class, easier to do it over there.

All right. So you'll make the motion.

MR. STRAUSS: Yes, your Honor.

THE COURT: I'll assume there will be no opposition. If there is you may get opposition, but get it done as soon as possible.

MR. STRAUSS: Yes, your Honor.

(Id. at 16-18.)

Despite these representations to Justice Bransten, HSBC never moved to dismiss the Levin Plaintiffs' claims.

There was then no activity on the docket of the State Court Action until March 2, 2015, after about 19 months, when, as described later, the Levin Plaintiffs and HSBC jointly moved for preliminary approval of a nationwide class action settlement.

In the interim, on September 30, 2013, an amended consolidated class action complaint was filed in this Court, with only Jura and Hanes, not the Levin Plaintiffs, as named plaintiffs.

On November 1, 2013, HSBC moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the amended consolidated class action complaint for failure to state a claim upon which relief can be granted.

On March 5, 2014, the Court granted in part and denied in part HSBC's motion to dismiss. Of relevance here, the Court dismissed the Plaintiffs' breach of contract claims and New York General Business Law Section 349 claim.

On March 12, 2014, without notice to or authorization from co-interim class counsel, the Levin Plaintiffs filed a document styled as a "motion for reconsideration" of the March 5, 2014 order to the extent it dismissed the breach of contract claims.

On March 17, 2014, Jura and Hanes, the named plaintiffs in the consolidated proposed class action and the clients of co-interim class counsel, filed a motion for reconsideration of the March 5, 2014 order. Also, on March 17, 2014, they cross-moved to strike the motion for "reconsideration" filed by the Levin Plaintiffs as procedurally improper.

On April 21, 2014, the Court (1) granted the motion by Jura and Hanes to strike to the extent the Levin Plaintiffs sought "reconsideration" of the March 5, 2014 order; (2) treated the Levin Plaintiffs' motion as one for leave to file an amicus brief and granted that request; and (3) granted motion for reconsideration by Jura and Hanes and reinstated the Section 349 and breach of contract claims. In doing so, the Court clarified the status of the Levin Plaintiffs as follows:

> [T]he Levin Plaintiffs, although they may ultimately qualify for and opt-in to the New York-based class action in Jura, are not parties to these consolidated class actions. Rather, properly viewed, the *Levin* action, like the *Jura* and *Hanes* actions, remains separately pending before the Court, and remains consolidated for pre-trial purposes with the *Jura* and *Hanes* actions.

In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig., 14 F. Supp. 3d 99, 102 (E.D.N.Y. 2014).

At this point, the following claims are pending in the consolidated proposed class action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing;

(3) violation of New York General Business Law § 349; (4) violation of the Unfair Competition Law, California Business and Professions Code § 17200, *et seq.*; and (5) violation of the False Advertising Law, California Business and Professions Code § 17500, *et seq.*

Thereafter, Jura and Hanes, represented by co-interim class counsel, engaged in extensive discovery with HSBC under the supervision of United States Magistrate Judge A. Kathleen Tomlinson as part of the consolidated proposed class action, including reviewing hundreds of thousands of pages of documents produced by HSBC; conducted nine depositions of present and former HSBC employees; and participated in the depositions of Jura and Hanes noticed by HSBC. With the exception of a non-party deposition, which has since been completed, fact discovery was completed by December 5, 2014. In addition, Jura and Hanes retained Arthur Olsen, a damages expert in overdraft cases.

On October 2, 2013 and July 14, 2014, co-interim class counsel engaged in two mediation sessions with HSBC before the Hon. Edward A. Infante (Retired), the former Chief Magistrate Judge of the United States District Court, Northern District of California. However, neither session was successful.

On January 31, 2015, Jura and Hanes moved under seal pursuant to Fed. R. Civ. P. 23(a), (a)(3), and (g) for an order (1) certifying a multi-state breach of contract class; (2) certifying a New York State Subclass based on claims for breach of the duty of good faith and fair dealing under New York law and violation of New York General Business Law § 349; (3) certifying a California State Subclass based on claims for breach of the duty of good faith and fair dealing under California law and violation of California's False Advertising Law and Unfair Competition Law; (4) appointing Jura and Hanes as representatives of the multi-state class;

(5) appointing Jura as representative of the New York Subclass; (6) appointing Hanes as representative of the California Subclass; and (7) appointing Cuneo Gilbert, Cotchett Pitre, Rigodsky & Long, and Cohen as class counsel.  Alternatively, Jura and Hanes requested that if the Court declined to certify the multi-state class, the Court certify the New York Subclass and the California Subclass based on their breach of contract claims.

In separate letters filed on February 5 and 6, 2015, Jura, Hanes, and HSBC jointly moved for extension of the expert discovery deadlines.  HSBC represented to Judge Tomlinson that it "anticipate[d] that the collection and production of the extensive data requested by plaintiffs' damages expert w[ould] not be completed before the expiration of the current deadline for filing expert reports." (Doc No. 133.)  HSBC also sought an extension of the time to oppose the motion for class certification, which it claimed should be decided before any future summary judgment motions.

On February 11, 2015, this Court directed HSBC to file any opposition papers to the motion for class certification on or before March 9, 2015.

Also, on February 11, 2015, Jura and Hanes moved pursuant to Fed. R. Civ. P. 26 and 37, and Local Civil Rules 37.1 and 37.2 to compel the production of certain checking account transactional data from HSBC.

On March 2, 2015, in the otherwise dormant State Court Action, the Levin Plaintiffs and HSBC filed a stipulated amended complaint, adding Michael Park ("Park"), another former HSBC customer as a named plaintiff.  Also, that day, in that case, the Levin Plaintiffs and HSBC jointly moved for approval of a preliminary nationwide class action settlement which they claim would globally resolve the underlying claims, including those in the federal litigation.

The same day, in the federal litigation, HSBC moved for a stay pending approval of a preliminary nationwide class action settlement in the State Court Action.

According to Levin Plaintiffs and HSBC, on December 19, 2014, they consummated the preliminary nationwide class action settlement with the assistance of the Hon. Layn R. Phillips, a former United States District Judge for the Western District of Oklahoma.  The Levin Plaintiffs and HSBC contend that this preliminary nationwide class action settlement would encompass the pending claims in the actions before this Court.  The Levin Plaintiffs and HSBC set a return date in the State Court Action of eight days for their motion for preliminary approval of the nationwide class action settlement.

On March 3, 2015, Judge Tomlinson held a telephone status conference with co-interim class counsel and counsel for HSBC.  Regarding discovery, Judge Tomlinson entered an amended final scheduling order for expert discovery by July 10, 2015, and summary judgment motion practice, and the filing of a joint-pre-trial order by November 25, 2015.  Judge Tomlinson stated in relevant part, as follows:

> In light of the history of these production issues, the Court is directing that the production be completed by April 10, 2015 and, unlike prior extensions which the Court has granted, the Court does not intend to extend this date further under any circumstances. Defendants are to make whatever arrangements are necessary with their vendor. If not produced by that date, there will be consequences.
>
> . . .
>
> An Amended Final Scheduling Order is entered below based on the parties' prior consensus set forth in the January 31, 2015 letter of Julia Strickland, Esq. [counsel for HSBC]

(Doc No. 168, 2-3.)

On March 3, 2015, at the parties' request, this Court set an expedited briefing schedule on the motion to stay and the proposed motion by Jura and Hanes to enjoin the Levin Plaintiffs and

HSBC from seeking preliminary approval of the nationwide class action settlement in the State Court Action. At the time, the Court did not hold the motion for class certification by Jura and Hanes in abeyance pending resolution of these matters, but extended HSBC's deadline to oppose that motion until April 2, 2015.

On March 5, 2015, Jura and Hanes filed opposition papers to the motion to stay the consolidated proposed class action proceedings and cross-moved pursuant to the All Writs Act, 28 U.S.C. § 1651(a) to enjoin the Levin Plaintiffs, as parties to the MDL, and HSBC, as parties to the MDL and the consolidated proposed class action, from taking any action to seek preliminary approval of, final approval of, or otherwise consummate the proposed nationwide class action settlement in the State Court Action.

Aside from challenging the adequacy of the proposed nationwide class action settlement in the State Court Action, Jura and Hanes contend that the Levin Plaintiffs and HSBC engaged in secret negotiations and conspired to circumvent the leadership structure of the consolidated proposed class action, appointed by this Court on July 22, 2013, and to effectuate a global settlement of the underlying class claims through the otherwise dormant State Court Action.

Jura and Hanes further assert that the Levin Plaintiffs reneged on their representation to Justice Bransten that if Jura moved to voluntarily discontinue without prejudice his claims in the State Court Action, the Levin Plaintiffs would do the same.

As to HSBC, Jura and Hanes contend that it reneged on its representations to Justice Bransten on August 14, 2013 that it would move for dismissal of the Levin Plaintiffs' claims in the State Court Action so that all the claims could be litigated in one forum. Jura and Hanes also contend that HSBC deliberately sought to delay briefing on the motion for class certification, not because of its expressed difficulties with discovery production, but from a desire to finalize the

motion for preliminary approval of the nationwide class action settlement before this Court could resolve the pending class certification motion. Finally, Jura and Hanes accuse HSBC of providing to the Levin Plaintiffs certain discovery materials Jura and Hanes disclosed to HSBC in the federal litigation, presumably in order to bolster the adequacy of the nationwide class action settlement in the State Court Action.

On March 12, 2015, the Levin Plaintiffs moved for leave to file an amicus brief in opposition to the cross-motion for injunctive relief pursuant to the All Writs Act. On March 13, 2015, the Court granted the motion for leave to file an amicus brief.

According to the Levin Plaintiffs, the Settlement in the State Court Action was not executed between Park – who is not a party to any federal action – and HSBC until March 2, 2015, although that part of the settlement between the Levin Plaintiffs and HSBC appears to have been consummated in December 2014. The Levin Plaintiffs further defend the adequacy of the proposed nationwide class action settlement in the State Court Action.

On March 12, 2015, HSBC filed opposition papers to the motion by Jura and Hanes for injunctive relief. HSBC contends that although this Court appointed co-interim class counsel to the exclusion of counsel of the Levin Plaintiffs, the Court did not appoint settlement counsel or otherwise enter an order limiting with whom HSBC could negotiate a settlement of other pending actions, particularly in state court.

HSBC further defends the adequacy of the proposed nationwide class action settlement in the State Court Action which they concede they consummated after approaching the Levin Plaintiffs following unsuccessful mediation sessions in the consolidated proposed class action in federal court. HSBC also notes that despite its representations to Justice Bransten, Jura and Hanes and co-interim class counsel were or should have been on notice that it had not sought

dismissal of the Levin Plaintiffs' claims in the State Court Action because the State Court Action docket is publicly viewable online.

On March 25, 2015, in the State Court Action, Justice Bransten held a status conference at which counsel for the various parties – including Himmelstein and Turk & Davidoff on behalf of the Levin Plaintiffs and Park; Rigrodsky & Long, Cohen, Cuneo Gilbert, and Cotchett Pitre on behalf of Jura and Hanes, who are not parties to the State Court Action; and Stroock & Stroock on behalf of HSBC – were present.  At this conference, Justice Bransten stated, in pertinent part, as follows:

> I do think that, indeed, I have the power to go forward and to do
> a preliminary settlement.
>
> . . .
>
> However, I do think that since there is ongoing
> litigation before Judge Spatt and Judge Spatt has already
> made one decision on the motion to dismiss and then made a
> decision on a motion to reargue and now before him is this
> issue of injunctive relief again staying any action I could
> take in the State of New York, I do not think it is going to
> be successful, but, nevertheless, it is before Judge Spatt,
> or it is about to be before Judge Spatt, to a point that I
> certainly don't think it is appropriate for me to go forward
> knowing that there is a request before a Federal Judge also
> dealing with the same issues and same parties as to their
> argument that there should be a stay.
>
> . . .
>
> And, I just feel that the better part of reason and
> valor and knowing the powers of the courts of the State of
> New York, knowing that we could go ahead, I feel that it is
> appropriate to delay my decision.
>
> I am not here to go around a Federal Court that has
> already heard and had discovery and is on the verge of
> making decisions, and say, ha, I got a mechanism to stop
> you, and I'm going to do you a favor, Federal Court, I'm
> going to not burden you with having to make these decisions.

Whereas he has been the one that has been litigating.

(Trans. at 21, 23, 25). Justice Bransten set a control date of May 12, 2015 for the parties in the State Court Action to advise her if this Court had resolved its pending motion and cross motion.

On March 30, 2015, HSBC moved for an additional extension of time to respond to the motion for class certification by Jura and Hanes, originally filed on January 31, 2015. HSBC proposed an extension of time for an indeterminate period of time, namely fourteen days after this Court ruled on the motions to stay and for injunctive relief. Jura and Hanes opposed this request on the ground that it would cause an unwarranted delay in the federal litigation.

On March 31, 2015, the Court denied HSBC's motion for an extension of time to respond to the pending motion for class certification.

On April 2, 2015, HSBC filed under seal its papers in opposition to the motion for class certification. Reply papers in support of that motion, if any, are currently due May 4, 2015.

For the reasons set forth herein, the Court (1) denies the cross motion by Jura and Hanes pursuant to the All Writs Act to enjoin the Levin Plaintiffs and HSBC from taking any action with respect to settling the State Court Action and (2) grants in part and denies in part the motion by HSBC to stay the consolidated proposed class action and MDL proceedings before this Court.

## I.   DISCUSSION

A.  The Interplay between the All Writs Act and Anti-Injunction Act

"The All Writs Act and the Anti–Injunction Act together govern the Court's ability to stay a pending state proceeding" In re A.A.S., No. 14 CIV. 703 (VEC), 2014 WL 840010, at *1 (S.D.N.Y. Mar. 4, 2014). Under the All Writs Act, the Court is empowered "to 'issue all writs necessary or appropriate in aid of [the Court's] . . . jurisdiction[ ] and agreeable to the usages and

principles of law." <u>Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.</u>, 386 F.3d 419, 425 (2d Cir. 2004)(quoting 28 U.S.C. § 1651(a)).

However, the Anti–Injunction Act "bars a federal court from enjoining a proceeding in state court unless that action is 'expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." <u>Id.</u> (quoting 28 U.S.C. § 2283). In considering these exceptions, "the Supreme Court has directed that '[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy.'" <u>Id.</u> at 425–26 (alteration in original)(quoting <u>Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs</u>, 398 U.S. 281, 297, 90 S. Ct. 1739 (1970)).

"One reason why doubts must be resolved against a federal injunction is the word 'necessary.' Section 2283 leaves only limited opportunities for federal intervention. In the main[,] § 2283 commits to the state court the question whether it would be prudent, beneficial, or helpful to let the federal case go first." <u>Adkins v. Nestle Purina PetCare Co.</u>, 779 F.3d 481, 485 (7th Cir. 2015)

Indeed, since the Anti–Injunction Act's prohibitory provision "rests on the fundamental constitutional independence of the States and their courts, the exceptions should not be enlarged by loose statutory construction." <u>Atl. Coast Line R.R. Co.</u>, 398 U.S. at 287, 90 S. Ct. 1739. "Proceedings in state courts[, thus,] should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately [the Supreme] Court." <u>Id.</u>

On the other hand, "[a] court's authority to issue an injunction under the [All Writs] Act is not limited by Rule 65(d), which restricts the scope of injunctions to parties and persons in

their control or in collaboration with them, because Rule 65 and the All–Writs Act are separate legal provisions invoked in different situations for the issuance of injunctions." U.S. Commodity Futures Trading Comm'n v. Amaranth Advisors, LLC, 523 F. Supp. 2d 328, 335 (S.D.N.Y. 2007). The Second Circuit has explained the difference as follows:

> Preliminary injunctions under Rule 65 are designed to preserve the status quo between the parties before the court pending a decision on the merits of the case at hand. In contrast, injunctions [under the All–Writs Act] are needed to prevent third parties from thwarting the court's ability to reach and resolve the merits of the federal suit before it.

In re Baldwin–United Corp., 770 F.2d 328, 339 (2d Cir. 1985). "In light of the different purposes, the Second Circuit did not construe the limitations in Rule 65 to apply to a court's authority to protect its jurisdiction under the All–Writs Act." Amaranth Advisors, 523 F. Supp. at 335.

In this regard, if a court finds an injunction "necessary and appropriate," the All Writs Act empowers the court "to enjoin and bind non-parties to an action when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction." Baldwin-United, 770 F.2d at 338 (citing United States v. New York Telephone Co., 434 U.S. 159, 174, 98 S. Ct. 364, 54 L. Ed. 2d 376 (1977)("The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice.")). Thus, the Court could enjoin Park from pursuing preliminary approval of the proposed nationwide class action settlement in the State Court Action irrespective of the fact that he is not a party to the MDL or the consolidated proposed class action in this Court.

Here, Jura and Hanes contend that an injunction against further prosecution of the proposed nationwide class action settlement in the State Court Action would "necessarily also dispose[] of any basis for a stay in deference to such a settlement." (Doc No. 142, at 12.) Accordingly, the Court will first address the motion by Jura and Hanes for an injunction and then HSBC's motion for a stay.

B.   "In Aid of Jurisdiction" Exception to the Anti-Injunction Act

Moving to enjoin the approval process of the proposed nationwide class action settlement in the State Court Action, Jura and Hanes first rely on the Anti–Injunction Act's exception for injunctions "necessary in aid of [the Court's] jurisdiction." 28 U.S.C. § 2283.  This exception "implies that 'some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'' SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC, 445 F. Supp. 2d 356, 360 (S.D.N.Y. 2006)(quoting Atl. Coast Line R.R. Co., 398 U.S. at 295).

"Historically, the 'in aid of jurisdiction' exception was seen as expressing the 'well settled rule that if an action is *in rem* the court first obtaining jurisdiction over the *res* could enjoin suits in other courts involving the same *res*.'" United States v. Schurkman, 728 F.3d 129, 136 (2d Cir. 2013)(citing Wright & Miller, Federal Practice & Procedure § 4225 (3d ed.)(italics added); see also Toucey v. New York Life Ins. Co., 314 U.S. 118, 134–35, 62 S. Ct. 139, 86 L. Ed. 100 (1941).

In 1948, Congress amended the Anti-Injunction Act to its present form by expressly incorporating three exceptions to the statute's prohibition against federal injunctions of state proceedings: namely, where such an injunction is (1) expressly authorized by Act of Congress,

(2) necessary in aid of the federal court's jurisdiction, or (3) to protect or effectuate the federal court's judgments. 28 U.S.C. § 2283.

In Vendo Co. v. Lektro–Vend Corp., 433 U.S. 623, 97 S. Ct. 2881, 53 L. Ed. 2d 1009 (1977), Vendo Co. sued a former employee in state court for violation of a noncompetition clause in his employment contract. The employee then sued Vendo Co. in federal court asserting that the noncompetition clause violated federal antitrust laws. Following the institution of the federal antitrust suit, Vendo Co. won a $7 million judgment in state court. The District Court, invoking the "in aid of jurisdiction" exception and other grounds, issued an order prohibiting Vendo Co. from collecting on the judgment.

The Supreme Court ultimately reversed, finding that the "in aid of jurisdiction" exception did not apply because the federal and state actions were each *in personam*. Id. at 641, 97 S. Ct. 2881. The Court noted:

> The traditional notion is that *in personam* actions in federal and state court may proceed concurrently, without interference from either court, and there is no evidence that the exception to § 2283 was intended to alter this balance. We have never viewed parallel *in personam* actions as interfering with the jurisdiction of either court; as we stated in Kline v. Burke Construction Co., 260 U.S. 226, 230 [43 S. Ct. 79, 67 L. Ed. 226] (1922):
>
> "[A]n action brought to enforce [a personal liability] does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending. Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of *res adjudicata* . . . ."

Vendo Co., 433 U.S. at 641, 97 S. Ct. 2881 (alterations in original). The Court observed that the "in aid of jurisdiction" exception thus "may be fairly read as incorporating th[e] historical *in rem* exception." Id. (citing Wright, Law of Federal Courts, 204 (3d ed. 1976)).

In <u>Wyly v. Weiss</u>, 697 F.3d 131, 137–38 (2d Cir. 2012), the Second Circuit reaffirmed the principle that the "in aid of jurisdiction" exception generally applies only where necessary to protect a federal court's jurisdiction over a *res*. The Second Circuit held that because "an *in personam* action involves a controversy over liability rather than over possession of a thing[,] . . . an *in personam* action generally does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending." <u>Id.</u> at 138 (internal quotation marks omitted).

Indeed, "[t]he Supreme Court has never held that a district court may enjoin a parallel *in personam* action under the 'in aid of jurisdiction' exception." <u>Id.</u> However, the Second Circuit has recognized "a limited exception" to the general rule that the "in aid of jurisdiction" exception does not permit a federal court to enjoin a parallel *in personam* action. <u>United States v. Schurkman</u>, 728 F.3d 129, 137 (2d Cir. 2013).

This exception was originally recognized in <u>Baldwin–United Corp.</u> There, the Second Circuit held that an injunction of an *in personam* action was justified where "the district court had before it a class action proceeding so far advanced that it was the virtual equivalent of a *res* over which the district judge required full control." 770 F.2d 328, 337 (2d Cir. 1985); <u>see generally</u> <u>In re Visa Check/Mastermoney Antitrust Litig.</u>, No. 96 CV 5238(JG), 2005 WL 2100930, at *3 (E.D.N.Y. Aug. 31, 2005)("[c]ourts have analogized both multidistrict ("MDL") proceedings and large class actions to *in rem* actions.")

However, in crafting that exception, the Second Circuit "relied on the exceptional circumstances of that case — the case's extraordinary complexity and multidistrict nature, the fact that 18 of the 26 defendants had already settled, and the fact that there was a 'substantially

significant prospect that [the remaining] 8 defendants [would] settle in the reasonably near future.'" Schurkman, 728 F.3d at 137-38 (limiting Baldwin-United to its unique facts).

Indeed, the Second Circuit and the district courts in this Circuit have repeatedly emphasized the limited breadth of the holding in Baldwin-United. Wyly, 697 F.3d at 138 (stating injunctions of *in personam* action are appropriate "under certain limited circumstances"); Ret. Sys. of Ala., 386 F.3d at 427–28 ("[c]learly, our decision in Baldwin–United did not create a blanket rule or presumption that a federal court in any multidistrict action may enjoin parallel state proceedings."); Hinds Cnty., Miss. v. Wachovia Bank N.A., 790 F. Supp. 2d 125, 132 (S.D.N.Y. 2011)(distinguishing United-Baldwin and finding that an All Writs Act injunction of a class action settlement process "would be neither lawful nor appropriate" because, among other reasons, there were more than a dozen defendants not a party to the settlement); SR Int'l Bus. Ins. Co., 445 F. Supp. 2d at 362 (describing Ret. Sys. of Ala. as clarifying "the limited scope of Baldwin-United" and interpreting the former case to reject the view that "a case's complexity, duration, and public importance permit a federal court to enjoin a state proceeding simply because the state court might decide issues within the federal court's jurisdiction before the federal court does."); In re Visa Check, 2005 WL 2100930, at *4 (denying motion for an All Writs Act Injunction of an Ohio state court case because, among other reasons, although the federal action was "no doubt a large, complex federal class action," it was not "on the verge of settling" but had already settled after a jury was impaneled); Oneida Indian Nation of New York State v. Cnty. of Oneida, N.Y., 132 F. Supp. 2d 71, 75 (N.D.N.Y. 2000)(distinguishing United-Baldwin and declining to issue an All Writs Act injunction of a state court action because, among other reasons, "there w[as] no foreseeable hope that th[e] land claim litigation w[ould] be resolved through [settlement negotiations]"); Maryland Cas. Co. v. W.R. Grace & Co., No.

71971 (SWK), 1993 WL 322809, at *5 (S.D.N.Y. Aug. 19, 1993)(distinguish <u>Baldwin-United</u> because, among other reasons, there was no evidence that a possible garnishment action in state court would divest the district court of jurisdiction or interfere with the Court's ability to resolve the pending claims for declaratory relief.); <u>Maryland Cas. Co. v. W.R. Grace & Co.</u>, 726 F. Supp. 62, 66 (S.D.N.Y. 1989)(denying a motion for an Writs Act Injunction, distinguishing <u>United-Baldwin</u> because, among other reasons, the present case did not involve a class action and was "so far advanced as to be the equivalent of a res over which the court requires full control."), <u>aff'd sub nom.</u> <u>Maryland Cas. Co. v. W.R. Grace & Co.</u>, 889 F.2d 1231 (2d Cir. 1989); <u>cf.</u> <u>In re Painewebber Ltd. Partnerships Litig.</u>, No. 94 CIV. 8547 (SHS), 1996 WL 374162, at *3 (S.D.N.Y. July 1, 1996)("Under these circumstances, pursuant to <u>Baldwin–United</u> and its offspring, this consolidated class action is analogous to a *res* over which the Court requires full control, thereby justifying a stay pursuant to the All Writs and Anti–Injunction Acts, at least to the extent that parties to this litigation seek to bring a new action in a different forum.") <u>and</u> <u>In re Joint E. & S. Dist. Asbestos Litig.</u>, 134 F.R.D. 32, 36 (E.D.N.Y. 1990)(granting an All Writs Act injunction for all pending asbestos litigation against one of the defendants).

The Court takes note in more detail of the latter two cases, <u>Painewebber</u> and <u>In re Joint E. & S. Dist. Asbestos Litig.</u>  In <u>Painewebber</u>, the Court, granting an All Writs Act Injunction, reasoned:

> the class action litigation here consists of 15 federal actions consolidated before this court as well as a Texas action that is coordinated with the federal actions.  A tentative settlement has been reached in all these actions and the parties expect that a settlement will be submitted for the Court's final approval, which must be obtained by January 26, 1997 — approximately seven months from today — or by April 26, 1997 if good cause exists for an extension.  Failing that, the $125 million currently in the escrow account will be forfeited.  The Court also has before it the related case brought by the Securities and Exchange Commission.

1996 WL 374162, at *4 (internal citations omitted). However, the Court expressly

declined to address "whether the action here has advanced so far as to justify an

injunction against similar suits brought in state court by non-parties" like Park here, who

is not a party to the MDL or the consolidated proposed class action. Id.

In In re Joint E. & S. Dist. Asbestos Litig., the Court, granting an All Writs Act

injunction, reasoned:

> The court is in the process of reviewing the settlement agreement of the proposed
> class action encompassing all asbestos-related claims against Eagle–Picher. At
> this critical juncture, the court can only continue its evaluation if the assets
> available to settle the case remain intact. An injunction of all proceedings is
> necessary to implement the terms of the settlement and to protect the court's
> jurisdiction over the class action.

Id. at 37.

Thus, "where a federal court is on the verge of settling a complex matter, and

state court proceedings may undermine its ability to achieve that objective," the situation

is sufficiently analogous to an *in rem* action that a stay of parallel *in personam* state court

proceedings is appropriate. Id. (quoting Standard Microsystems Corp. v. Texas

Instruments Inc., 916 F.2d 58, 60 (2d Cir. 1990)).

"Many — though not all — of the cases permitting injunctions in complex

litigation cases involve injunctions issued as the parties approached settlement." In re

Diet Drugs, 282 F.3d 220, 236 (3d Cir. 2002); Baldwin United, 770 F.2d at 337; In re

Corrugated Container Antitrust Litig., 659 F.2d 1332, 1134-35 (5th Cir. 1981)(affirming

a district court order enjoining the plaintiffs in a class action from pursuing a lawsuit

pending in a South Carolina state court in which the same persons were also plaintiffs

and from pursuing any claims relating to class action in any other court because, among

other reasons, "th[e] complicated antitrust action had required a great deal of the district court's time and necessitates its ability to maintain a flexible approach in resolving the various claims of the many parties").

In <u>Diet Drugs</u>, the Third Circuit aptly described the basis for this reality:

> Complex cases in the later stages — where, for instance, settlement negotiations are underway — embody an enormous amount of time and expenditure of resources. It is in the nature of complex litigation that the parties often seek complicated, comprehensive settlements to resolve as many claims as possible in one proceeding. These cases are especially vulnerable to parallel state actions that may "frustrate the district court's efforts to craft a settlement in the multi-district litigation before it," thereby destroying the ability to achieve the benefits of consolidation. In complex cases where certification or settlement has received conditional approval, or perhaps even where settlement is pending, the challenges facing the overseeing court are such that it is likely that almost any parallel litigation in other *fora* presents a genuine threat to the jurisdiction of the federal court.

282 F.3d at 236.

"Without the power to enjoin in that setting, defendants may be deterred from settling claims." <u>In re Visa Check</u>, 2005 WL 2100930, at *3. "For that reason, the imminence of settlement is an important factor in deciding whether to enjoin state court proceedings; the far-off possibility of settlement, standing alone, is insufficient." <u>Id.</u> "Similarly, even in the most complex of cases, a district court may not enjoin state proceedings simply because they interfere with the court's schedule." <u>Id.</u> (citing <u>Ret. Sys. of Ala.</u>, 386 F.3d at 431).

As the Second Circuit has held,

> [A] federal district court, even assuming it has some interest in avoiding delay in its own proceedings, has no interest — no interest that can be vindicated by the exercise of the federal injunction power — in being the first court to hold a trial on the merits. We have held that a district court may not issue an injunction simply to be the first court to reach a judgment and thereby avoid issues of collateral estoppel:

> There is no reason why [a] state court cannot or should not determine issues of fact and state law relevant thereto as they come up in the state litigation. The subsequent effect of collateral estoppel, far from requiring the federal court to stay proceedings in the state court, is a result which should be welcomed to avoid the task of reconsidering issues which have already been settled by another competent tribunal.

Id. at 429 (quoting Vernitron Corp. v. Benjamin, 440 F.2d 105, 108 (2d Cir. 1971).

With these principles in mind, the Court concludes that Baldwin–United involved circumstances distinguishable from those present here. This is no doubt a large, complex federal consolidated proposed class action and an MDL at that. However, crucially, unlike in Baldwin-United, this case is not "on the verge of settling." Standard Microsystems Corp., 916 F.2d at 60.

In this regard, as noted above, Jura and Hanes engaged in two unsuccessful mediation sessions with HSBC, the last one on July 14, 2014, before Judge Infante. However, the fact that settlement discussions occurred in no way suggests that prompt settlement was or is likely. Indeed, HSBC indicates that settlement discussions ceased in August 2014. Since that time, the parties in the consolidated proposed class action have continued to engage in discovery. On January 31, 2015, Jura and Hanes moved for class certification, which HSBC opposed. Further, the prospect of settlement between Jura and Hanes and HSBC in the consolidated proposed class action appears even more remote in light of the proposed settlement in the State Court Action on a nationwide class action basis, possibly encompassing the claims in this consolidated proposed class action.

Under these circumstances, and in accordance with Baldwin–United and its progeny, the Court finds that an injunction under the All Writs Act in aid of the Court's jurisdiction is inappropriate.

To be sure, there are a number of cases outside this Circuit in which district courts have invoked the All Writs Act to enjoin competing actions.

Jura and Hanes cite <u>Winkler v. Eli Lilly & Co.</u>, 101 F.3d 1196 (7th Cir. 1996) as one example. In that case, the district court entered an injunction barring discovery in a parallel *in personam* state proceeding with regard to a confidential agreement between a drug manufacturer and its attorney. The Seventh Circuit stated that "the district court quite reasonably believed that the plaintiffs were resorting to the state courts for the specific purpose of evading its ruling denying discovery of the [confidential] agreement." <u>Id.</u> at 1202. The Court held that, "[w]here a litigant's success in a parallel state court action would make a nullity of the district court's ruling, and render ineffective its efforts effectively to manage the complex litigation at hand, injunctive relief is proper." <u>Id.</u> However, the Seventh Circuit ultimately held that the district court based its injunction on "inadequate facts," and vacated the injunction. <u>Id.</u> at 1205–06.

In <u>In re Checking Account Overdraft Litig.</u>, 859 F. Supp. 2d 1313, 1322 (S.D. Fla. 2012), an overdraft litigation as in this case, accountholders brought putative class actions against banks, alleging excessive overdraft fees on debit card transactions. After the actions were consolidated into a multidistrict litigation, the bank moved to stay all further class-related proceedings and suspend a scheduling order pending class action settlement in a competing case.

As here, the Accountholders cross-moved to enjoin bank, or any other defendant, from settling claims in the competing case. The Accountholders contended that the proposed settlement relied on insufficient consideration and its unfavorable terms strongly implied that it was a contrived result of a "reverse auction" settlement. See <u>Reynolds v. Beneficial Nat'l Bank</u>, 288 F.3d 277, 280–285 (7th Cir. 2002)(discussing "the practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with the hope that the district court will approve a weak settlement that will preclude other claims against the

defendant"). The Accountholders noted that preliminary approval of the settlement was immediately sought in an effort to subsume the putative class in the subject litigation.

The Court declined to delve into these allegations of collusion and a "reverse auction." However, the Court granted an All Writs Act Injunction, in large part based on the fact that the litigation pending before it was filed before the competing litigation. Applying the "First-to-File Rule," the Court held that "the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." Id.

Further, the Court notes that In re Checking Account Overdraft Litig. involved a motion to enjoin a federal action, not a state action. Therefore, the Anti-Injunction Act was inapplicable. See also In re Bank of Am. Wage & Hour Employment Litig., 740 F. Supp. 2d 1207, 1208 (D. Kan. 2010)(enjoining parties from proceeding with settlement of overlapping federal action without reference to the Anti-Injunction Act). Further, the action enjoined was subject to a conditional transfer order from the Judicial Panel on Multidistrict Litigation ("JPML").

In In re Owen Federal Bank FSB Mortgage Servicing Litigation, 397 F. Supp. 2d 957 (N.D. Ill. 2005), the district court enjoined counsel from pursuing parallel actions in state court because it "would subject th[e] court's pre-trial Orders, including its Order granting Owen's Motion for Partial Summary Judgment, to numerous instances of second guessing by state courts, and could well result in violations of the court's pretrial Order staying discovery." Id. at 963. The counsel enjoined had "stated their intention to distribute materials obtained in their parallel state suits to Plaintiffs' counsel in this MDL, even though the court has issued a stay of discovery." Id.; see generally Gibson v. Int'l Bus. Machines Corp., No. 1:10-CV-00330 (LJM), 2011 WL 4402599, at *2 (S.D. Ind. Sept. 22, 2011)(finding that the injunction issued in Owen

Federal Bank "likely would not survive the Supreme Court's decision . . . in Smith v. Bayer Corp., ⸺ U.S. ⸺131 S. Ct. 2368, 180 L. Ed. 2d 341 (2011)).

In In re America Online Spin-Off Accounts Litig., MDL Docket No. 04-1581 (RSWL), 2005 WL 5747463 (C.D. Cal. 2005), 12 class actions were transferred to the Central District by an MDL Panel for pre-trial proceedings. One central allegation was that America Online, through the use of deceptive pop-up ads, allegedly opened spin-off accounts without the permission of the account holders. The plaintiffs had initiated settlement discussions with America Online when the plaintiffs sought injunctive relief under the All Writs Act to enjoin America Online from proceeding with a settlement of plaintiffs' claims in Illinois state court. The District Court concluded that a settlement in the Illinois action would diminish the court's "ability to bring the MDL litigation to a natural conclusion," and therefore enjoined America Online from proceeding with the state court settlement. Id. at *4. The Court further noted that America Online was under a duty to inform the court of the Illinois tag-along action and concluded that "the underlying policy behind MDL litigation, coupled with a threat to the Court's jurisdiction over the MDL plaintiffs, weigh[ed] in favor of granting Plaintiffs['] motion for injunctive relief." Id.; see also In re Jamster Mktg. Litig., No. 05-CV-0819JM (CAB), 2008 WL 4482307, at *10 (S.D. Cal. Sept. 29, 2008)

In In re Managed Care Litigation, 236 F. Supp. 2d 1336 (S.D. Fla. 2002), a multidistrict litigation proceeding, the District Judge invoked the All Writs Act to halt settlement activities outside of that multidistrict proceeding relating to a case that properly belonged in the Managed Care MDL. CIGNA was simultaneously defending a case in the Managed Care MDL and a narrower state court class action. The Illinois state court litigation moved into federal court as a result of the maneuverings of CIGNA and the state court plaintiffs in an attempt to avoid the

Managed Care MDL.  The Managed Care plaintiffs revamped their pleadings; CIGNA removed the action to a federal court in Illinois based on the newly filed claims, and the parties immediately moved for preliminary approval of a class settlement.

However, the Court noted the critical importance of respecting the statute that established the JPML for the purpose of consolidating similar cases and promoting judicial efficiency, as well as the importance of subjecting class settlements to rigorous review because of their far-reaching impact on numerous parties.  Enjoining CIGNA from moving forward to settle outside of the Managed Care MDL, the Court emphasized the need to respect the JPML, which had vested it with authority over the centralized actions, and that allowing the settlement outside of the Managed Care MDL would directly undermine that authority. Id. at 1343.

Finally, in In re Lease Oil Antitrust Litigation No. II, 48 F. Supp. 2d 699 (S.D. Tex. 1998), the district court enjoined the parties from entering into a "global" settlement agreement in state court that would have had the effect of releasing the federal antitrust claims (which could only be litigated in federal court) without prior notice to and approval of the court.  The court took this action "to protect its jurisdiction over the exclusively federal antitrust claims . . . The MDL case features exclusive federal claims which entitle a prevailing plaintiff to treble damages. . . . If an effort by the defendants to reach an inadequate or collusive settlement in state courts is 'left unchecked,' then this court will be absolutely prevented from 'bring[ing] the litigation to its natural conclusion.'" Id. at 704 (citation omitted).

In this case, the allegations leveled against the Levin Plaintiffs and HSBC are comparable to those in the above-mentioned cases.  In particular, as noted above, Jura and Hanes note that HSBC previously represented to this Court and to Justice Bransten that it desired to litigate against a single set of class counsel and that, for this reason, represented to Justice Bransten that

it would seek dismissal of the State Court Action against the Levin Plaintiffs. Jura and Hanes contend that HSBC reneged on this representation and colluded with the Levin Plaintiffs to procure a purported global settlement in the otherwise dormant State Court Action, thereby circumventing the MDL and this Court's order appointing co-interim class counsel to the exclusion of counsel for the Levin Plaintiffs. Jura and Hanes contend that HSBC did this in part because it knew that the Levin Plaintiffs, who were not parties to the consolidated proposed class action and whose counsel was not appointed interim class counsel in federal court, would enjoy little to no leverage in negotiating a settlement. As counsel for Jura and Hanes argued before Justice Bransten on March 25, 2015, the Levin Plaintiffs "had no bargaining position, they were essentially subject to dismissal at the whim of HSBC for pursuing cases in two courts simultaneously." (Trans. at 12.)

As in In re Checking Account Overdraft Litig., the Court declines to delve into the merits of these allegations, which in essence go to the adequacy of the proposed nationwide class action settlement in the State Court Action. That said, the Court pauses to note that while the allegations at issue here are similar in certain respects to some of the above-mentioned cases, there are certain material differences.

For example, while the Levin Plaintiffs and HSBC may have desired to circumvent the orderly progression of the MDL litigation and the consolidated proposed class action, they did not, like in Winkler, violate an order of this Court. This Court did not, nor could it, limit with whom HSBC could negotiate in the pending State Court Action.

Furthermore, unlike the scenario in In re Checking Account Overdraft Litig., the "First Filed Rule" works against Jura and Hanes, the parties seeking an injunction here. Under this Rule, "where there are two competing lawsuits, the first suit should have priority." Certain

Underwriters at Lloyd's London v. Nat'l R.R. Passenger Corp., No. 14-CV-04717 (FB)(CLP), 2015 WL 1182764, at *2 (E.D.N.Y. Mar. 13, 2015)(citation and quotation marks omitted); see generally Adkins, 779 F.3d at 484-85 ("Nothing in Sprint [Communications, Inc. v. Jacobs, ––– U.S. ––––, 134 S. Ct. 584, 187 L. Ed. 2d 505 (2013),] or any other decision of the Supreme Court suggests that the court presiding over the case likely to reach judgment second can jump the queue by enjoining the suit that is likely to reach decision first.").

"Although it is typically invoked in non-class contexts, the first-filed rule has been applied to class action suits filed by different plaintiff classes against the same defendant." Bukhari v. Deloitte & Touche LLP, No. 12 CIV. 4290 (PAE), 2012 WL 5904815, at *3 (S.D.N.Y. Nov. 26, 2012). "For example, courts have applied the rule to parallel class actions filed against the same defendant and involving claims based, at least in substantial part, on the same law." Id.

Here, the competing lawsuits seek almost identical relief against the same entities and have both been filed in New York, albeit one in state court and the other in federal court. Under these circumstances, application of the first-filed rule is appropriate.

Of course, there are two exceptions to the first-filed rule: "(1) where the balance of convenience favors the second-filed action, and (2) where special circumstances warrant giving priority to the second suit." Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc., 522 F.3d 221, 274–75 (2d. Cir. 2008). "The factors relevant to the balance of convenience analysis are essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)." Id.

Jura and Hanes do not address the "First Filed Rule" or its exceptions. Nevertheless, the Court finds that the relevant factors, including the convenience of the parties, the location of

relevant documents, the locus of operative facts, the availability of process to compel witnesses, and the relative means of the parties, do not strongly favor applying the convenience-based exception to the First-Filed Rule. In this regard, the Court notes that it is not transferring this action to another tribunal, but partially staying it in deference to the separate, but similar, State Court Action. In other words, the relevant claims at issue may, in fact, be ultimately resolved in this Court.

Nor do special circumstances warrant giving priority to the second filed action pending before this Court. "Special circumstances," which the Second Circuit has noted are "quite rare," "include manipulative or deceptive behavior by the first-filing plaintiff (e.g., when the first lawsuit is an improper anticipatory declaratory judgment action) and instances in which forum shopping alone motivated the choice of forum for the first suit." Thomas v. Apple-Metro, Inc., No. 14-CV-4120 (VEC), 2015 WL 505384, at *3 (S.D.N.Y. Feb. 5, 2015).

Here, there is no indication that the Levin Plaintiffs engaged in forum shopping in initially bringing the State Court Action. Rather, the allegations of deception and forum shopping are largely directed at HSBC, an adversarial party. However, it is not clear that the narrow "special circumstances" exception to the First-Filed Rule applies to forum shopping by a defendant.

In any event, as noted above, apart from the First-Filed Rule, the Second Circuit and the District Courts in this Circuit have, consistent with Baldwin-United, declined to enjoin competing *in personam* actions under the in aid of jurisdiction exception to the Anti-Injunction Act absent an indication that the action before the Court was on the verge of settlement. For the reasons explained above, such is not the case here.

C.  The Relitigation Exception

Jura and Hanes also invoke the Relitigation Exception to the Anti-Injunction Act as an alternative basis for enjoining the settlement process in the State Court Action.  Under this exception, a federal court may enjoin a state court action "to protect or effectuate its judgments." Young Rah v. Sang Chul Lee, No. 12 CIV. 7969 (JPO), 2014 WL 1099812, at *3 (S.D.N.Y. Mar. 20, 2014).  "The relitigation exception, which was designed to implement well-recognized concepts' of claim and issue preclusion, authorizes a federal court to enjoin state litigation of a claim or issue that previously was presented to and decided by the federal court." Wyly, 697 F.3d at 139 (internal quotations and citations omitted).

The Supreme Court has construed the relitigation exception as follows:

> an essential prerequisite . . . is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court. . . . [T]his prerequisite is strict and narrow[, and is based upon] what the earlier federal order actually said . . . [not] what the order was intended to say.

Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 148, 108 S. Ct. 1684 (1988)(discussing Atl. Coast Line, 398 U.S. 281).  Reviewing courts look to whether a particular point was actually argued before the prior court and whether the language in the prior court's order "necessarily implies any decision" on the issue with respect to which an injunction is later sought. Atl. Coast Line, 398 U.S. at 290.

Here, Jura and Hanes essentially contend that counsel for the Levin Plaintiffs were not appointed interim class counsel to the consolidated proposed class action and, therefore, their proposed settlement of the State Court Action with HSBC constitutes a "relitigation" of the Court's order appointing interim class counsel.  However, as noted above, this Court did not, nor could it, limit with whom HSBC could engage in settlement negotiations in the State Court

Action.  Similarly, the Court did not, nor could it, prevent HSBC from negotiating a resolution of the separate federal action by the Levin Plaintiffs, which although a part of the consolidated MDL proceedings, is separately pending before this Court.  Jura and Hanes point to no language in any order that has been relitigated by virtue of the proposed nationwide class action settlement in the State Court Action.  Accordingly, the Court finds that the Relitigation exception is inapplicable here.

D. Judicial Estoppel

Jura and Hanes also argue that HSBC is judicially estopped from seeking to consummate the proposed nationwide class action settlement in the State Court Action or to stay this action. As noted above, Jura and Hanes maintain that HSBC represented to Justice Bransten that it would seek dismissal of the claims by the Levin Plaintiffs but later reneged on that assurance. Jura and Hanes further contend that, in petitioning for the original creation of the MDL proceedings, HSBC made certain representations that these claims would be litigated in federal court, although Jura and Hanes do not point to any specific representations or specify to whom they were made.

Judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by [that party] in a prior legal proceeding." Robinson v. Concentra Health Servs., Inc., No. 14-941-CV, 2015 WL 1295149, at *3 (2d Cir. Mar. 24, 2015)(citation and quotation marks omitted).  "Courts that choose to apply the doctrine of judicial estoppel do so only with caution." Carson Optical, Inc. v. Prym Consumer USA, Inc., No. CV 11-3677 ARL, 2013 WL 1209041, at *9 (E.D.N.Y. Mar. 25, 2013)(citation and quotation marks omitted).

"A party invoking judicial estoppel must show that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment." Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 6 (2d Cir.1999)(internal citations omitted).

Judicial estoppel also only applies where "a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position." Intellivision v. Microsoft Corp., 484 Fed. App'x 616, 618–19 (2d Cir. 2012)(quoting New Hampshire v. Maine, 532 U.S. 742, 749, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)(emphasis added)).

Here, on August 14, 2013, Justice Bransten clearly relied on HSBC's representations that it would seek to dismissal of the State Court Action as to the Levin Plaintiffs. More than that, Justice Bransten expressed a strong inclination to grant such a motion, in part due to HSBC's concerns about defending against dueling class actions. However, because HSBC did not ultimately make that motion to dismiss, there was no judgment or ruling in favor of it based on that position, nor is it clear that it "succeed[ed] in maintaining that position."

On the other hand, "[b]ecause the rule is intended to prevent 'improper use of judicial machinery,' judicial estoppel 'is an equitable doctrine invoked by a court at its discretion.'" New Hampshire, 532 U.S. at 750, 121 S. Ct. at 1815 (citations omitted).

In this regard, Jura and Hanes raise a number of equitable concerns, namely about the litigation conduct of the Levin Plaintiffs and HSBC, some of which have been described above, and the effect the judicial imprimatur of that conduct could have on future complex class action cases. First, Jura and Hanes emphasize the substantial investment of time and money by co-interim class counsel, including significant motion practice, discovery, and retention of a

damages expert. Jura and Hanes also argue that HSBC shared discovery materials provided to it by Jura and Hanes to counsel for the Levin Plaintiffs, thereby allowing counsel for the Levin Plaintiffs to benefit from their substantial efforts. Second, Jura and Hanes argue that the Levin Plaintiffs and HSBC engaged in deceptive forum shopping. Third, Jura and Hanes argue that HSBC sought extensions of time to complete discovery and to oppose the motion for class certification on false pretenses in order to acquire more time to effectuate the proposed nationwide class action settlement in the State Court Action and thereby subsume the claims of the consolidated proposed class action and the MDL.

The Court finds that some of these equitable arguments are more well-founded than others. It is clear that HSBC reneged on its representations to Justice Bransten that it would seek dismissal of the Levin Plaintiffs' claims in the State Court Action. HSBC attempts to justify this reversal by claiming that, subsequent to that representation, co-interim class counsel filed an amended consolidated class action complaint which omitted the Levin Plaintiffs as named plaintiffs.

This is true. However, as the Court previously clarified about a year ago, "the <u>Levin</u> action, like the <u>Jura</u> and <u>Hanes</u> actions, remains separately pending before the Court, and remains consolidated for pre-trial purposes with the <u>Jura</u> and <u>Hanes</u> actions." (Doc No. 98, at 5.) Further, on July 22, 2013, the Court indicated that the <u>Levin</u> Action remained a part of the MDL Action. (Doc No. 19 at 24)(denying Jura's request to have all future filings filed in the <u>Jura</u> Action and directing that documents relating to all actions should be filed on the MDL docket sheet and on the docket sheet of each individual action). Indeed, the <u>Levin</u> Action is still designated a member case of the MDL docket number, and neither HSBC nor the Levin Plaintiffs have ever moved to alter this status.

Thus, it is clear that the contention by HSBC (Doc No. 147, at 11.) that the <u>Levin</u> Action is no longer part of the MDL misapprehends this Court's prior orders.

To the extent Jura and Hanes challenge the merits of the proposed nationwide class action settlement in the State Court Action, whether because it does not provide for treble damages; was the product of a collusive "reverse auction"; or because it was procured by a party and counsel with no bargaining leverage; or for some other reason, these arguments are more appropriately addressed to Justice Bransten in the form of objections to the proposed settlement. Indeed, the Levin Plaintiffs (Doc No. 158, Exh. 1, at 20.) and HSBC (Doc No. 147, at 6.) have expressly recognized Jura and Hanes' right to object in the State Court Action to the proposed nationwide class action settlement and frame this right as further reason to deny injunctive relief. In this regard, co-interim class counsel's well-documented direct history with this litigation, including motion practice, extensive discovery, and a nearly fully-briefed motion for class certification, makes them uniquely qualified to object to the proposed nationwide class action settlement in the State Court Action.

As for Jura and Hanes themselves, the Court notes that any State Court approved class-action settlement would not be binding on them if they chose to opt out. <u>Hinds Cnty., Miss. v. Wachovia Bank N.A.</u>, 790 F. Supp. 2d 125, 132 (S.D.N.Y. 2011)("It is . . . significant that the State Agreement can extinguish the claims of only those Eligible Counterparties who choose to become party to it; the State Agreement will not affect the claims of putative class members who decline to participate or are ineligible, nor will it affect the claims of any putative class members as to defendants other than BoA, of which more than a dozen still remain.").

As to the alleged inequities that would inure to co-interim class counsel if the Court permits the proposed nationwide class action settlement approval process to proceed, the Court finds these inequities to be largely the product of their own making.

This is in part because co-interim class counsel knew or should have known that HSBC did not move to dismiss the State Court Action against the Levin Plaintiffs because the State Court Action docket is publicly viewable online. Further, following the August 14, 2013 conference before Justice Bransten, Co-Interim Class Counsel also knew that HSBC only expressed an intention to so move, and that the Levin Plaintiffs had not, in fact, voluntarily dismissed its state law claims as it had previously agreed to do.

At this point, the Court finds that the litigation strategy of the Levin Plaintiffs appears to have been reasonable and not a product of bad faith. On April 24, 2013, when the Levin Plaintiffs' represented to Justice Bransten that it would join any motion by Jura for voluntary discontinuance of the State Court Action, they presumably still held hope that they would be named plaintiffs in the anticipated federal class action and that their counsel would be appointed interim class counsel. Again, at the time, there was no indication by any of the Plaintiffs' counsel in the MDL proceedings that they would be willing to serve together as co-interim class counsel.

As noted above, on July 22, 2013, the Court appointed Cuneo Gilbert, Cotchett Pitre Rigrodsky & Long, and Cohen as co-interim class counsel. The Court declined to appoint Himmelstein or Turk & Davidoff, counsel for the Levin Plaintiffs, as interim class counsel.

Later that day, Himmelstein filed a letter requesting that the Court reconsider its July 22, 2013 order declining to appoint it as co-interim class counsel.

On July 24, 2013, the Court issued an order declining to disturb its previous determination absent a formal motion for reconsideration.

On July 30, 2013, Himmelstein, joined by Turk & Davidoff, filed a formal motion for reconsideration.

Thus, it is apparent why when, less than a month later, counsel appeared before Justice Bransten, the Levin Plaintiffs declined to voluntarily dismiss their state law claims. Their counsel having not been appointed co-interim class counsel in federal court and a motion for reconsideration of that ruling pending, they presumably and reasonably did not desire to unilaterally surrender their claims in the State Court Action. In other words, the underlying circumstances that presumably explained the Levin Plaintiffs' prior willingness to join Jura's voluntary discontinuance of their state law claims had fundamentally changed.

On August 23, 2013, the Court denied the motion for reconsideration, reasoning:

> In the Court's view, both sets of attorneys took a calculated risk in seeking to be appointed as interim class counsel, to the exclusion of each other. Having suffered the negative consequences of taking that risk, Himmelstein's belated representations that he would be pleased to serve as interim counsel with Rigrodsky and Cohen come off as self-serving.

(Doc No. 40, at 5.)

On September 30, 2013, the consolidated class action complaint was filed, with only Jura and Hanes, not the Levin Plaintiffs, included as named plaintiffs.

Viewed this way, Jura and Hanes' grievances are more appropriately directed at HSBC, a litigation adversary, who they claim engaged in a collusive "reverse auction" settlement of the State Court Action; disclosed discovery materials related to the consolidated proposed class action to the Levin Plaintiffs, presumably in order to bolster settlement negotiations in that case; and sought extensions of discovery and briefing deadlines in federal court on false pretenses.

Jura and Hanes essentially charge HSBC with keeping the State Court Action in its back pocket in the event it was not satisfied with the settlement prospects, or progress in general, of the federal litigation.

Again, the Court declines to address the merits of these allegations, some of which are more appropriately reserved for an objection to the proposed nationwide class action settlement.

However, even if these allegations are true, co-interim class counsel, and by extension Jura and Hanes, should have kept abreast of the fact, plainly viewable online to the public, that the State Court Action, while dormant in a general sense, remained pending. Furthermore, given the well-documented acrimony in this and the state litigation, including motions for sanctions in State Court and the unwillingness to work jointly as co-interim class counsel, the fact that HSBC approached the Levin Plaintiffs about consummating a settlement of the State Court Action, and that the Levin Plaintiffs obliged, should not be surprising.

Further, as a general matter, as demonstrated by the extensive case law addressing motions to enjoin competing class actions, efforts by one or multiple parties to circumvent another similar case are commonplace.

As noted recently by Judge Easterbrook in Adkins, "parallel state and federal litigation is common. The first to reach final decision can affect the other, either through rules of claim and issue preclusion (res judicata and collateral estoppel) or through effects such as reducing the scope of a class from 50 to 49 states. Yet the potential effect of one suit on the other does not justify an injunction." 779 F.3d at 484.

To be sure, some of HSBC's expressed concerns about the need to stay the federal litigation, namely, to avoid the risk of inconsistent outcomes regarding substantially identical claims, ring hollow. It is clear that HSBC could have sought dismissal of the State Court Action

at any time as it had previously represented to Justice Bransten was its intent to do. In this regard, in retrospect, HSBC's prior concerns about the need to consolidate these actions in one forum and to negotiate with one set of interim class counsel also ring hollow. Finally, HSBC's current concerns about duplicative motion practice between the federal and state courts borders on specious given that, as noted above, it could have moved to dismiss the Levin Plaintiffs' claims, a motion Justice Bransten appeared ready to grant.

However, the Court finds that the alleged litigation strategies of the parties here do not tip the equities in favor of finding that HSBC is judicially estopped from pursuing the proposed nationwide class action settlement in the State Court Action or seeking a stay of the MDL and consolidate proposed class action, even if the legal requirements of judicial estoppel were satisfied here. The Court rests this determination on the fact that the status of the State Court Action was publicly available online, the common-place litigating realities of competing class actions, and the fact that the long-standing acrimony between counsel made all this foreseeable.

Based on the foregoing, the Court denies the motion for injunctive relief by Jura and Hanes pursuant to the All Writs Act.

E. The Motion for a Stay

Having declined to enjoin the Levin Plaintiffs, Park, and HSBC from pursuing approval of the nationwide class action settlement in the State Court Action, the question becomes whether the Court should also stay the federal consolidated proposed class action and MDL proceedings.

A court "may decide in its discretion to stay civil proceedings pursuant to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." United States v. Town of Oyster Bay,

No. 14-CV-2317 (ADS)(SIL), 2014 WL 6886122, at *3 (E.D.N.Y. Dec. 5, 2014)(quoting Laumann v. Nat'l Hockey League, No. 12 CIV. 1817 (SAS), 2013 WL 837640, at *2 (S.D.N.Y. Mar. 6, 2013)(quoting Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 96 (2d Cir. 2012))(internal quotation marks omitted); accord Landis v. N. Am. Co., 299 U.S. 248, 254, 57 S. Ct. 163, 166, 81 L. Ed. 153 (1936)("Apart, however, from any concession, the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").

On a motion to stay, it is the moving party's burden to establish "a clear case of hardship or inequity in being required to go forward." Trikona Advisors Ltd. v. Kai–Lin Chuang, No. 12–CV–3886 (JW), 2013 WL 1182960, at *2 (E.D.N.Y. Mar. 20, 2013)(quoting Landis, 299 U.S. at 255, 57 S. Ct. 163). The factors usually applied by courts in this Circuit when deciding a motion to stay a civil action are: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." Id. (citing Kappel v. Comfort, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)); see also Laumann, 2013 WL 837640 at *2 (same); Estate of Heiser v. Deutsche Bank Trust Co. Americas, No. 11 CIV. 1608 (MHD), 2012 WL 2865485, at *3 (S.D.N.Y. July 10, 2012) aff'd, No. 11 CI. 1608 (AJN), 2012 WL 5039065 (S.D.N.Y. Oct. 17, 2012)("This test has been applied to stay a federal action in light of a concurrently pending federal action . . . either because the claim arises from the same nucleus of facts or because the pending action would resolve a controlling point of law. . . .")(quoting SST Global Tech., LLC v. Chapman, 270 F. Supp. 2d 444, 445 (S.D.N.Y. 2003))(internal quotation marks and alterations omitted). In balancing these factors, "the basic goal is to avoid prejudice"

to either party. <u>Laumann</u>, 2013 WL 837640 at *2 (quoting <u>In re OxyContin Antitrust Litig.</u>, No. 10 Civ. 6038 (SHS), 2012 WL 5184949, at *6 (S.D.N.Y. Oct. 19, 2012))(internal quotation marks omitted).

"Courts routinely exercise this power and grant stays when a pending nationwide settlement could impact the claims [in the case before them]." <u>Ali v. Wells Fargo Bank, N.A.</u>, No. CIV-13-876-D, 2014 WL 819385, at *3 (W.D. Okla. Mar. 3, 2014); <u>Wince v. Easterbrooke Cellular Corp.</u>, 681 F. Supp. 2d 688, 692 (N.D. W. Va. 2010); <u>see</u> <u>Lindley v. Life Investors Ins. Co.</u>, Nos. 08-CV-0379 (CVE)(PJC), 09-CV-0429, 2009 WL 3296498 (N.D. Okla. Oct. 9, 2009) (granting stay pending result of fairness hearing of class-wide settlement in similar case); <u>In Re RC2 Corp. Toy Lead Paint Products Liability Litigation</u>, No. 07 C 7184 (HDL), MDL No. 1893, 2008 WL 548772 (N.D. Ill. Feb. 20, 2008)(granting stay pending final approval of settlement in another action involving similar putative classes and claims).

Here, Jura and Hanes do little to oppose to the motion for a stay, instead focusing their arguments on the motion for injunctive relief which they claim would dispose of the motion for a stay. However, having denied the motion for injunctive relief, the Court now addresses the motion for a stay of the MDL and consolidated proposed class action in this Court.

HSBC argues that if a stay is not entered, both it and this Court will be burdened by duplicative motion practice, unnecessary discovery, and potentially inconsistent outcomes. The Court pauses to note again that these risks are the product of HSBC's own making. Had HSBC moved to dismiss the Levin Plaintiffs' claims in the State Court Action, as it represented to Justice Bransten that it would do in August 2013, and had the motion been granted, there would not be competing actions in the federal and state court. Thus, HSBC does not paint a particularly sympathetic litigating picture.

Further, HSBC's concern about wasting judicial resources – in particular that of the federal court – rings hollow after it litigated the federal cases, with extensive discovery under the supervision of Judge Tomlinson, for approximately two years only to seek global resolution of the underlying claims in the State Court Action.

For these reasons and because the remaining discovery in the federal litigation may shed light on the adequacy of the proposed nationwide class action settlement, the Court declines to stay this action on the terms HSBC and the Levin Plaintiffs propose. Rather, the final expert discovery deadlines, which Judge Tomlinson set after nearly two years of discovery under her supervision, remain in effect. In addition, the deadline for filing of a joint pre-trial order by November 25, 2015 also remains in effect. This approach allows more than sufficient time for the class action settlement approval process to run its course in the State Court Action without disrupting the advanced proceedings in this Court.

However, to avoid the risk of inconsistent outcomes, the Court will hold the Jura and Hanes' motion for class certification in abeyance pending resolution of the class action settlement approval process in the State Court Action. The May 4, 2015 deadline for them to submit reply papers in support of that motion is cancelled. Jura and Hanes may be afforded an opportunity to submit such papers following resolution of the class action settlement approval process in the State Court Action. Finally, the deadlines to commence summary judgment practice are canceled and may be reset at a later date.

The foregoing approach also addresses the purported concerns of HSBC as to conserving the federal court's resources. If, as here, the motion for class certification is held in abeyance and the final discovery deadlines left in place and unlikely to be extended, the federal court will

be required to expend only minimal resources on this litigation while the class action settlement approval process runs its course in the State Court Action.

To the extent HSBC does not itself want to be saddled with duplicative discovery, again, this concern is a product of its own making. After nearly two years of extensive discovery and motion practice in federal Court, the Court endeavors to limit the disruption to the consolidated proposed class action and MDL proceedings in federal court, the forum in which the underlying claims may be ultimately resolved.

This approach – namely, allowing for the completion of expert discovery, apparently the only outstanding discovery – also limits any prejudice to Jura and Hanes who have been actively litigating these cases in this Court for two years.

The Court is also of the view that its approach here largely addresses the abstention factors enunciated in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976), a doctrine HSBC does not directly rely on but references in its papers. See generally First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc., 862 F. Supp. 2d 170, 181 (E.D.N.Y. 2012)("The doctrine presents an *extraordinary and narrow exception* to the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them. Unlike other doctrines of abstention, which are based on considerations of proper constitutional adjudication and regard for federal-state relations, Colorado River abstention rest[s] on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.")(citations and quotation marks omitted)(emphasis added).

## III. CONCLUSION

Based on the foregoing reasons, HSBC's March 2, 2015 motion to stay the consolidated proposed class action and the MDL proceedings pending resolution of the class action settlement process in the State Court Action is granted in part and denied part. The Court will hold Jura and Hanes' motion for class certification in abeyance pending resolution of that process. However, discovery is not stayed and the deadlines set by Judge Tomlinson on March 3, 2015 remain in effect. The cross-motion, filed on March 5, 2015, by Jura and Hanes pursuant to the All Writs Act to enjoin HSBC and the Levin Plaintiffs from taking any action to obtain preliminary approval of, final approval of, or otherwise consummate the proposed nationwide class action settlement in the State Court Action is denied.

**SO ORDERED.**
Dated: Central Islip, New York
April 9, 2015

_____*Arthur D. Spatt*_____
ARTHUR D. SPATT
United States District Judge